## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 2000-CC-02011-SCT

*PUBLIC EMPLOYEES'*

*RETIREMENT SYSTEM*

*v.*

*ROBERT ANN SHURDEN*

| | |
|---|---|
| DATE OF JUDGMENT: | 11/9/2000 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MARY MARGARET BOWERS |
| ATTORNEYS FOR APPELLEE: | CHADWICK WARREN RUSSELL |
| | MICHAEL ALLEN AKERS |
| NATURE OF THE CASE: | STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 05/02/2002 |
| MOTION FOR REHEARING FILED: | 5/15/2002; denied 8/1/2002 |
| MANDATE ISSUED: | 8/8/2002 |

**EN BANC.**

**WALLER, JUSTICE, FOR THE COURT:**

¶1. Robert Ann Shurden's application for regular[1] disability retirement was denied by the Public Employees Retirement System's Medical Board because there was insufficient objective evidence supporting her claim that her medical condition prevented her from performing her duties as a correctional psychiatric assistant. Shurden appealed and received a hearing before PERS's Disability Appeals Committee. The Appeals Committee recommended that Shurden's application for permanent disability be denied, and the PERS Board of Trustees approved and adopted this recommendation. Shurden appealed to the Circuit Court of First Judicial District of Hinds County, which reversed the denial of benefits, finding that the Board's decision was arbitrary and capricious and not supported by the evidence contained in the record. On appeal, PERS contends that the circuit court improperly reweighed the facts and substituted its judgment for the state agency and erroneously found the PERS decision was not supported with substantial evidence and was arbitrary and capricious. We affirm the judgment of the circuit court.

## FACTS

¶2. Robert Ann Shurden was employed since 1989 by the Mississippi Department of Corrections as a psychiatric assistant at the state penitentiary at Parchman. At the time of her hearing before the Appeals Committee, Shurden allegedly had not been to work in two years; she had not, however, been terminated from her job. It appears that she was on leave without pay and her employment status was still pending. Shurden, age 53, applied for disability with nine and three fourths years' service credit in the retirement system.

¶3. Miss. Code Ann. § 25-11-113(1)(a) (1999) provides in pertinent part as follows:

> Upon the application of a member or his employer, any active member in state service who has at least four (4) years of membership service credit may be retired by the board of trustees . . ., provided that the medical board, after a medical examination, shall certify that the member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired.

¶4. At Shurden's hearing in September of 1999, Stanley Russell, M. D., a psychiatrist who had known and worked with her since 1989, and who had seen Shurden as a patient for approximately a year and a half before the hearing, testified on her behalf. He also submitted a narrative summary of the litany of medical problems that Shurden had suffered through the years:

> In 1982 she sustained a fractured nose and had to have sinus surgery for the first time. In 1983 she had an automobile accident and a second sinus surgery. In 1985 she had bladder surgery. She also had multiple sinus infections in that year. In 1986 she was rear ended in a motor vehicle accident and subsequently had to be hospitalized for back pain. At that time she was also experiencing problems with depression as well as multiple trigger points pain for which she was given injections to help get relief. She was also placed on Desyrel for her depression. In February of 1990 she had a problem with severe back pain and has to miss considerable time from her work. In December of 1990 she had more problems with back pain causing missed time for work. In 1992 Ms. Shurden was suffering from chronic constipation and underwent a colonoscopy in an attempt to try to determine that problem as well as a lot of the abdominal pain that she was having. During 1992 she continued to have severe back pain and to miss time from her work. She requested that medical doctor send her to a neurosurgeon for a second opinion concerning her back pain but the doctor refused to refer her. Later she developed additional symptoms and was subsequently referred to Dr. Frothingham, a neurosurgeon in Greenville, MS. In October of 1992 she was put to bed as the right side of her body was numb. In November of 1992 she had surgery on her back. Following the back surgery she continued to have a problem with back pain during 1993. She also experienced repeated sinus infections. She saw various physicians, took different antibiotics, and finally had additional sinus surgery in 1995.

> Since 1995 Ms. Shurden has continued to have a problem with chronic pain along with problems of severe depression. She has seen many physicians including an internist, a neurologist, a pain specialist, a physical medicine and rehabilitation specialist. To complicate her problem even more Ms. Shurden sustained a fall at the Central Mississippi Correctional Facility in January of 1998. The accident caused acute injury and aggravated the chronic problems that she has struggled with over the years. Ms. Shurden has effectively been unable to work in any sustained way since January of 1998. If one looks at her work record she has missed a tremendous amount from work since 1995. She has tried

to deal with this problem. She has sought medical help from many physicians. She has also seen a psychologist and psychiatrist in the past. To complicate her situation further Ms. Shurden has a problem with various allergies and has had difficulty with many of the medications that have been prescribed to try to treat her various conditions.

¶5. Dr. Russell gave her current diagnoses as major depression; somatoform pain disorder; fibromyalgia; multiple allergies; and post op status for multiple sinus operations, lumbar laminectomy, and trauma following her accident in January, 1998. Dr. Russell listed Shurden's psychological stressors as continued deterioration in her physical health, ongoing problems with chronic pain, inability to cope with the stress of gainful employment, and lack of adequate social support. Finally, Dr. Russell concluded, "In my professional opinion even a cursory review of her medical records would surely establish the fact that Ms. Shurden is incapable of coping with the physical and mental stresses associated with any type of gainful employment."

¶6. In a handwritten supplement to her appeal before the Appeals Committee, Shurden wrote:

The depression that I talked about gets so bad that I have missed over a week at work unable to stop crying. Some days I would get almost to work and start to cry for no apparent reason. Some days I would cry at work and have to leave because I could not control it. I have gone for over a week without bathing or brushing my teeth. . . . The spastic colon affect[s] me with chronic constipation. This has been going on for about 9 years. Before that I had severe diarrhea. I have to take something to eliminate almost every day. The elimination is very painful and causes severe nausea. . . . The pain I have in my neck and shoulders & head prevent me from sitting at a desk to work or read. The pain in my leg & hips prevent me from sitting for more than 20-30 minutes at a time. . . . I also have insomnia. I have been awake until 5:00 in the morning many times. . . . I have had so much pain all over my body that I thought I was going to lose my mind.

¶7. PERS responds by asserting that, although Dr. Russell testified at the hearing that he treated Shurden for depression, Shurden was not suicidal and had not been hospitalized for depression. At the hearing, the following exchange took place between Dr. Meeks of the Appeals Committee and Ms. Shurden:

Q. You mentioned a lot of different medical problems. What is it exactly that prevents you from being able to do the work that you were doing? What is it that makes it difficult?

A. The pain and the depression.

Q. Pain and depression.

A. I don't know if you know anything about fibromyalgia or not.

Q. Yeah, I know a fair amount about that and there's some mention here where you hurt all over. One of the things they have mentioned in all these note and records that we have is mention of some depression, but it's just mentioned a few times and there's not much emphasis placed on it to make it sound like that was something that was disabling.

A. Well, those are medical doctors and they don't usually get into that. They say this is what they see. But with Dr. Russell and that's what he was treating me for.

¶8. In response to PERS's inquiry as to whether she thought Shurden's disability was permanent, Ruth K. Fredericks, M. D., one of Shurden's primary physicians, wrote "chronic." Michael M. Morgan, M. D., an internist, performed her lab work and reported that all was within normal limits except for cholesterol, which he felt could be controlled by diet. Dr. Morgan further wrote:

> She went on to complain that she was just in agony and pain, that she was just having to take Darvocet for her pain and I got the impression she wanted me to give her some more and I told her that I generally do not give Darvocet for her particular complaint and that she should try to call the group I referred her to for sooner follow-up and if she insisted that I give her some more Darvocet she might want to seek medical attention from another internist and that I would help her find one.

¶9. R. H. Flowers, III, M. D., who examined Shurden for chronic sinusitis in July of 1998 wrote:

> PHYSICAL EXAMINATION: Generally a well developed woman who is in no acute distress. She is not sniffing and coughing. Temperature 97.2, blood pressure 120/81, pulse 90 and regular, weight 165 ½ pounds.

> HEENT: Nasal cavities are clear. The throat is normal, the tympanic membranes are normal.

> NECK: Supple without goiter.

> LYMPH NODES: No lymphadenopathy.

> HEART: Regular rate and rhythm without rub, murmur or gallop.

> LUNGS: There are bilateral expiratory wheezes and rhonchi throughout. Consolidation changes.

> ABDOMEN: Soft, nontender and without organomegaly or mass.

> EXTREMITIES: No clubbing, cyanosis or edema.

> IMPRESSION: Chronic sinusitis with probable secondary bronchopulmonary infection.

¶10. Todd L. Fulcher, M. D., who treated Ms. Shurden during 1998, wrote in Shurden's progress notes as follows:

> 9/23/98 Robert Ann Shurden was back in the office today to talk about whether or not she ought to apply for disability. She has not actually gone to work and tried, so I told her I wanted her to do that first. She is going to work tomorrow and work half days through the end of next week.

> 9/30/98 Robert Ann Shurden was in the office today with what looked like allergic conjunctivitis. I had called her in some Acular and it is starting to help. I told her to continue this. She has not yet been to work. I told her she needs to go back tomorrow and work ½ days for a 1 ½ weeks.

> 10/12/98 In the office today for follow-up. She worked for one day but her fibromyalgia flared up and she has not gone back. I had a long discussion with her and told her she needs to give it time and adjust to the working. She has not given it an adequate try at this time. Her left foot continues to give her pain so we x-rayed it and it was negative. I told her to go back to work for half days for one week and then full days.

10/19/98 Robert Ann Shurden was back in the office today secondary to having fallen over the weekend suffering a contusion of her right elbow and left wrist. She did not go to work last week when I told her to but stayed out one more day. She did work several half days last week without any problem. She is wanting to be off work again; I told her she could stay off today but had to go back to work tomorrow.

¶11. PERS claims that the Medical Board's denial of Shurden's claim was based on a thorough review of her medical documentation, and that while there were ample subjective complaints of pain and inability to work, the objective evidence was insufficient to support her claim of disability.

## DISCUSSION

¶12. Judicial review of an administrative agency's findings and decisions is limited. An agency's conclusions must remain undisturbed unless the agency's order: (1) is not supported by substantial evidence; (2) is arbitrary or capricious; (3) is beyond the scope or power granted to the agency; or (4) violates one's constitutional rights. *Public Employees' Ret. Sys. v. Marquez*, 774 So. 2d 421, 425 (Miss. 2000). "If an administrative agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious." *Id.* at 430.

### I. WHETHER THE CIRCUIT COURT ERRONEOUSLY REWEIGHED THE FACTS AND SUBSTITUTED ITS OWN JUDGMENT FOR THE BOARD'S DECISION. WHETHER THE BOARD'S DECISION WAS SUPPORTED BY SUBSTANTIAL EVIDENCE. WHETHER THE BOARD'S DECISION WAS ARBITRARY AND CAPRICIOUS.

¶13. The applicant for disability "has the burden of proving to the Medical Board and to the Appeals Committee that he or she is in fact disabled." *Public Employees' Ret. Sys. v. Dishmon*, 797 So. 2d 888, 893 (Miss. 2001). "This Court may neither substitute its own judgment for that of the agency which rendered the decision nor reweigh the facts of the case." *Marquez*, 774 So. 2d at 425. "A rebuttable presumption exists in favor of the action of an administrative agency, and the burden of proof is on the party challenging an agency's action." *Id.* However, "the circuit court must look at the full record before it in deciding whether the agency's findings were supported by substantial evidence." *Id.* at 427. "While the circuit court performs limited appellate review, 'it is not relegated to wearing blinders.'" *Id.*

¶14. We have defined substantial evidence as "something more that a 'mere scintilla' or suspicion." *Id.* at 425. It has also "been defined by this Court as 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Id.* Further, substantial evidence has been described "as that which provides an adequate basis of fact from which the fact in issue can be reasonably inferred." *Dishmon*, 797 So. 2d at 892.

¶15. "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Mississippi State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So. 2d 973, 977 (Miss. 1999). "An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id.*

¶16. In reversing PERS's decision, the circuit court cited Dr. Russell's report, the PERS form filled out by Dr. Fredericks, a Social Security Administration determination of disability, plus voluminous supporting

medical records, and found that the Board's decision was arbitrary and capricious and not supported by the evidence contained in the record.

¶17. Shurden met the requirements prescribed by Miss. Code Ann. § 25-11-113 (1999), Shurden's physician, Dr. Russell, testified that, in his opinion, Shurden was incapable of coping with the physical and mental stress associated with any type of gainful employment. Shurden was on leave from her job because she could not properly perform it and she had been awarded Social Security disability benefits. She provided a list of her medical problems from 1982 through the present. Her current diagnoses included major depression, somatoform pain disorder, fibromyalgia, multiple allergies, post op status for multiple sinus operations, lumbar laminectomy, and trauma following her accident in January, 1998.

¶18. Shurden's case is comparable to *Public Employees' Ret. Sys. v. Marquez*, 774 So. 2d 421 (Miss. 2000), in which Marquez had many impairments: atypical face pain, endometriosis, cervical disc disease, chronic fatigue syndrome, degenerative joint disease, peptic ulcer disease, gastroesophageal reflux disease, irritable bowel syndrome, and migraine headaches. Her surgeries included a hysterectomy, tear duct surgery, mastectomy and breast implants following a breast cancer diagnosis, and cholecystectomy. She had also been diagnosed with depression, hypertension, and fibromyalgia. Given these impairments, the circuit court found that the decision by PERS, that Marquez was not disabled, was arbitrary and capricious, and we agreed and affirmed. *Id.* at 421.

## CONCLUSION

¶19. It is clear that the PERS decision denying disability benefits was arbitrary and capricious. There was no need to reweigh the facts. Dr. Russell stated that a cursory look at Shurden's medical records would reveal that she was disabled. PERS should not stray from the purpose of Miss. Code Ann. § 25-11-113, to compensate disabled employees that have not met the 25 year retirement criteria, in denying benefits nor set the bar so high that this purpose is frustrated. Therefore, the judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, is affirmed.

¶20. **AFFIRMED.**

> **McRAE AND SMITH, P.JJ., DIAZ, EASLEY AND CARLSON, JJ., CONCUR. COBB, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, C.J. GRAVES, J., NOT PARTICIPATING.**

> **COBB, JUSTICE, DISSENTING:**

¶21. The majority has determined that PERS's decision denying disability benefits to Ms. Shurden was arbitrary and capricious. Because I disagree, I respectfully dissent.

¶22. The majority correctly cites this Court's definition of arbitrary and capricious. "An administrative agency's decision is arbitrary when it is not done according to reason and judgment, but depending on the will alone." *Mississippi State Dep't of Health v. Natchez Cmty. Hosp.*, 743 So.2d 973, 977 (Miss. 1999). "An action is capricious if done without reason, in a whimsical manner, implying either a lack of understanding of or disregard for the surrounding facts and settled controlling principles." *Id.* However, I must ask, what part of PERS's decision does the majority cite that was not done according to reason, but depending on the will alone? Where did PERS perform its statutory duty in a whimsical manner? If our standard of review is mere window dressing, then we should admit that it is, and stop saying that we are

applying a deferential standard, when in fact we are reviewing de novo.

¶23. It is clear that Shurden has suffered more than her share of medical ailments. However, as a reviewing court we are not permitted to step in the shoes of the administrative agency. The Medical Board that denied Shurden's claim was made up of three physicians. The Appeals Committee that agreed with that determination included two other physicians. Sorting through voluminous and often contradictory medical records and testimony, then determinating whether an individual is permanently disabled, as that term is defined by the statute, is better left to the physicians than to the judges. This is the idea behind the creation and expansion of administrative agencies. "The existence within government of discreet areas of quasi-legislative, quasi- executive, quasi-judicial regulatory activity in need of expertise is the *raison d'etre* of the administrative agency." *McGowan v. Miss. State Oil & Gas Bd.*, 604 So.2d 312, 323 (Miss. 1992). "Because of their expertise and the faith we vest in it, we limit our scope of judicial review." *Id.*

¶24. The majority claims that this case is comparable to *Public Employees' Ret. Sys. v. Marquez*, 774 So.2d 421, 425 (Miss. 2000). The basis of this conclusion is that both Marquez and Shurden have suffered from a long list of ailments. However, the majority's reliance on *Marquez* is misplaced. In *Marquez* we held that the PERS decision was arbitrary and capricious because:

> PERS put forth **no controverting evidence** in the face of various medical diagnoses made by various credible doctors. When medical evidence and testimony given by Marquez is contrasted with PERS's rationale for denial of benefits, the evidence supporting PERS's decision to deny benefits appears insubstantial.

*Id* at 429 (emphasis added).

¶25. Here, Shurden's application for disability is supported by her subjective testimony, and only one doctor, her current psychiatrist and former co-worker Dr. Russell's. However, unlike *Marquez*, there is substantial controverting evidence in the record before us. On the PERS form, in response to the question as to whether Shurden's disability was permanent, Dr. Fredericks wrote "chronic." In his notes, Dr. Morgan wrote that all Shurden's lab work was normal except for her cholesterol level, and that could be controlled by diet. Dr. Morgan further wrote that he was under the impression that Shurden was trying to get some more Darvocet, and she would have to see another physician for that. Dr. Flowers found her to be generally a well developed woman who was in no acute distress. Dr. Fulcher told her several times she needed to go back to work, evidently to no avail. By contrast, in *Marquez* there was "no controverting evidence."

¶26. Rather than *Marquez*, this case is more comparable to *Byrd v. Public Employees' Ret. Sys.*, 774 So.2d 434, 436 ( Miss. 2000) on this particular issue. In *Byrd* we affirmed the circuit court's finding that PERS properly denied Byrd's claim for permanent disability.[2] We went on to say:

> Although the assessments of the medical personnel who treated Byrd are in stark contrast from one another, it was the job of PERS to determine which of these assessments to rely on in making its decision. The opinions of Dr. Vohra and Charlene Toney, standing alone, are sufficient to support a finding that Byrd is not permanently disabled. To the contrary, had PERS found Byrd to be permanently disabled, Dr. Pearson's opinion, standing alone, would appear to support such a finding. In rendering its decision to deny Byrd's application for permanent disability benefits, PERS obviously gave more weight to the findings of Dr. Vohra and Charlene Toney than was given to the findings of

Dr. Pearson. Such an act was within PERS' discretion. Therefore, we hold that there is sufficient evidence in the record supporting PERS' decision in this case.

*Byrd*, 774 So.2d at 438. As we stated in ***Public Employees' Ret. Sys. v. Dishmon***, 797 So.2d 888, 892 (Miss. 2001):

> The question here is not whether there was evidence in support of Dishmon's disability, but whether there was substantial evidence to support the finding of the administrative agency. The standard of review limits this Court to reviewing the lower court's decision to determine whether the record can support this finding. This Court may not substitute its own judgment for that of the agency which rendered the decision, nor may we re-weigh the facts of the case.

¶27. In the case before us there is substantial evidence in the record to support the findings of PERS, thus those findings were not arbitrary and capricious. If we are not going to follow our stated standard of review, we should say so. We should admit that whenever we disagree with PERS's decision, we will reweigh the facts and substitute our own judgment for that of PERS. That is what the circuit court did. That is what the majority is doing. And because that is not our standard of review, I respectfully dissent.

**PITTMAN, C.J., JOINS THIS OPINION.**

1. There are two categories of disability benefits available to PERS members, "regular" or "hurt on the job" disability.

2. We reversed and remanded, however, because a physician who was on the Medical Board participated in the appeals process reviewing the Medical Board's decision.