809 So.2d 690 (2001)
The PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant,
v.
Ocenious THOMAS, Appellee.
No. 2000-SA-00725-COA.
Court of Appeals of Mississippi.
June 26, 2001.
Rehearing Denied September 4, 2001.
Certiorari Denied March 7, 2002.
*691 Mary Margaret Bowers, Attorney for Appellant.
Brian H. Neely, Tupelo, Attorney for Appellee.
Before KING, P.J., BRIDGES, THOMAS, and IRVING, JJ.
IRVING, J., for the court:
¶ 1. This appeal is from an order entered by the Circuit Court of the First Judicial District of Hinds County, Mississippi reversing the order of the Public Employees' Retirement System's Board of Trustees (PERS) that denied Ocenious Thomas disability benefits.

STATEMENT OF THE CASE
¶ 2. Mr. Thomas is a fifty-four year-old retired social studies teacher who served the Clay County Public School for twenty-nine years. He voluntarily terminated his position, according to him, due to physical ailments including, but not limited to, diabetes, loss of hearing, and memory loss. Mr. Thomas retired at the conclusion of the 1996/1997 school year, and the high school, where he taught for twenty-nine years, was closed at the end of that school year with the children being transferred to another school district for the ensuing school year. Mr. Thomas filed a claim for disability benefits on June 19, 1997. PERS's medical board denied the claim, and Mr. Thomas appealed that administrative decision to the PERS's disability appeals committee. The disability appeals committee recommended that the benefits be denied. Upon review of the record of the proceedings of the disability appeals committee, PERS's Board of Trustees accepted the recommendation of the disability appeals committee and denied Mr. Thomas's request for permanent disability benefits. As stated, the circuit court reversed PERS's decision to deny the benefits.
¶ 3. In this appeal, PERS presents three issues: (1) the court erred in re-weighing the facts and substituting its judgment for that of the administrative agency by finding that Mr. Thomas is entitled to disability benefits, (2) the court erred in declaring that the decision of the Board of Trustees of the Public Employees' Retirement System is unsupported by any evidence, and (3) the court erred in holding that the decision of the Board of Trustees of the Public Employees' Retirement System is arbitrary and capricious.
¶ 4. After careful review of the issues, we agree with the circuit court and affirm the decision of that court reversing the decision by PERS to deny the benefits.

STATEMENT OF THE FACTS
¶ 5. During the hearing before the disability appeals committee, Mr. Thomas testified that he taught at one school his entire teaching career and that his job evaluations had been good. He also testified that he was taking insulin, Lipitil, a vitamin, aspirin and other over-the-counter drugs, the names of which he could not recall. He was not taking any medication for his high blood pressure. That was being controlled by his diet. Mr. Thomas testified that he had not had any heart problems. When asked for the medical reason that prevented him from being able to work, Mr. Thomas said it was his diabetes. *692 He testified that his diabetes had gotten so bad until he would have to send to the school cafeteria two to three times a week to get something sweet to elevate his blood sugar level. He also pointed out that the stress caused him not to function well. Thomas gave this further explanation:
A. I get nervous real quick.
Q. Um-hum.
A. Kept going up and down [sugar level]. And when it [sugar level] drops, I just start sweating and getting real nervous, and just not able to perform my job, what I've been doing all the time.
Q. Okay.
A. It just got worse and worse.
Q. Okay.
A. Wasn't able to stand like I always like to stand up and teach. I find myself sitting down, and I have a hearing problem. You don't hear well sitting down as well as you would. I'm used to standing up, walking around. I just wasn't able to walk around the classroom like I formerly did.
¶ 6. During further examination, Mr. Thomas testified that he had trouble with lecturing because of memory problems, that he just could not teach with "lapsing memory." He testified that his nervousness and loss of memory was getting worse and had gotten worse over the years. Mr. Thomas also testified that he gets tired if he stands a lot and that he has a balance problem. He did admit, however, that he could probably walk around the block a couple of times and sometimes more, maybe even a mile.
¶ 7. Mr. Thomas also submitted medical records, including a report from his long-time physician, Dr. Norris Crump. In the records, Dr. Crump stated, "Mr. Thomas is certainly not physically able to continue with employment. From a medical standpoint, under no circumstances will I give Mr. Thomas a medical release for employment."

ANALYSIS OF THE ISSUES PRESENTED
¶ 8. Although PERS has assigned three separate issues, they are interrelated. Therefore, we will combine them for discussion and resolution.
¶ 9. PERS argues that the circuit court disregarded the fact that five physicians sat on the disability appeals committee to review Mr. Thomas's claim, examine his records and visually observe his testimony. This Court is bound by a standard of review which only permits it to overturn the decision of an administrative agency under the following circumstances: (1) the decision is not supported by substantial evidence, (2) the decision is arbitrary and capricious, (3) the decision is beyond the power of the administrative agency, and (4) the decision violated some statutory or constitutional right. Mississippi State Dep't of Health v. Natchez Cmty. Hosp., 743 So.2d 973, 976(¶ 10) (Miss.1999). Furthermore, a reviewing court may not substitute its own judgment in place of the agency's decision and may not reweigh the evidence. Melody Manor Convalescent Ctr. v. Mississippi State Dep't of Health, 546 So.2d 972, 974 (Miss.1989).
¶ 10. In denying Thomas's claim for disability benefits, the Board of Trustees of PERS adopted the findings and recommendation of the disability appeals committee which, based on our review of the record, made no specific findings of fact. The "Proposed Statement of Facts, Conclusions of Law and Recommendations" submitted by the disability appeals committee and adopted by the Board of Trustees of PERS is nothing more than a recitation *693 of what is contained in Thomas's medical records, a synopsis of Thomas's testimony and the following general conclusion:
There is insufficient objective evidence to support Mr. Thomas's claim that he is permanently mentally or physically incapacitated from performing his job as a school teacher. Having heard testimony, received evidence and giving due consideration to same and to the applicable law and regulations and its hearing of the appeal, the Disability Appeals Committee recommends to the Board of Trustees that the administrative determination of the PERS Medical Board denying disability benefits be affirmed. The circuit court, in overturning PERS's decision to deny disability benefits, said this:
Based upon the Court's thorough review of the record in this case, the claimant testified he was no longer able to teach due to his medical condition. He submitted medical evidence that he was no longer able to perform his duties as a teacher due to diabetes and other less serious medical problems. His treating physician stated the claimant was unable to work. The treating physician also stated that he would not release the claimant to work under any circumstances. The evidence put forth by the claimant in support of his disability application was overwhelming. Furthermore, the claimant's evidence was undisputed. In short, there was no evidence in the record that would contradict the claimant's testimony and medical evidence.
This Court's review is limited to the "substantial evidence" standard. Even in light of this limited standard of review, the Court is confident that not only is the decision of PERS unsupported by substantial evidence, it is unsupported by any evidence. Therefore, the Court finds the decision of PERS was not supported by substantial evidence and was arbitrary and capricious.
¶ 11. We could not agree more with the trial judge's assessment of the record. Mississippi Code Annotated Section 25-11-113 (Rev.1999), which addresses disability retirement, provides in part:
Upon the application of a member or his employer, any active member in state service ... may be retired by the board of trustees ... provided that the medical board, after a medical examination, shall certify that the member is mentally or physically incapacitated from the further performance of duty, that such incapacity is likely to be permanent, and that the member should be retired....
¶ 12. We have searched the record to find, and could not find, any evidence which contradicts Thomas's testimony and the medical statement from Dr. Crump that Thomas is "physically incapacitated from the further performance of duty [and] that such incapacity is likely to be permanent." In his opinion, the trial judge also made the following observation:
For some reason, throughout the hearing, the written decision of PERS and its appellate brief to this Court, PERS has made continuous references to the claimant's testimony that "he had taught all those years" and that the school district at which he taught was closed after the last year he taught. Exactly how this testimony supports PERS's decision to deny disability benefits is a mystery to this Court. It appears PERS is attacking the claimant's credibility by questioning the timing of his application for disability benefits. If the references to this testimony are intended for impeachment of the claimant's testimony, such "evidence" comes no where close to supporting PERS's decision in light of *694 the overwhelming and undisputed medical evidence supporting the application.
¶ 13. In its brief before this Court, PERS argues that the trial judge substituted his judgment for that of the five physicians who sat on the disability appeals committee. PERS points out that these doctors observed Thomas's demeanor while he presented his testimony. PERS continues its argument by asserting that "[t]he circuit court dismissed the fact that several learned doctors weighed Mr. Thomas's claims against the evidence presented." The question that has to be asked and answered is what was the evidence that was presented. It is the answer to this question that reveals the fallacy of PERS's argument. It is not a reweighing of the evidence to observe that there was no evidence presented which contradicted Thomas's evidence. Had that been done, we would have a different case.
¶ 14. We are mindful of the fact that the decision to deny Thomas's claim was based on the review of five doctors with current medical knowledge of diabetes after examining Thomas's medical records and considering Thomas's testimony. It may be that the doctors on the disability appeals committee did not believe Thomas's testimony. That was their prerogative. Or it may be that they were convinced from their own knowledge of diabetes that, even with the conditions described by Thomas, he could still work. However, their decision had to be based on substantial evidence. The substantial evidence that is sufficient to withstand appellate scrutiny cannot be evidence contained within the confines of the doctors' heads. It must be evidence in the record. Further, as the trial judge observed, there was no evidence contradicting Dr. Crump's medical statement to the effect that Thomas is permanently disabled. Therefore, even when Thomas's testimony is discounted, a substantial hurdle yet remains in PERS's path to the decision to deny benefits.
¶ 15. Additionally, we note from the record that the Social Security Administration declared Thomas disabled on May 26, 1997, approximately three weeks prior to Thomas's application for disability benefits with PERS. While PERS was certainly not bound by such determination, we point out that Mississippi Code Annotated Section 25-11-113 (Rev.1999) permits PERS to accept a determination of disability by the Social Security Administration "in lieu of a certification from the medical board."
¶ 16. It appears that the central premise undergirding the arguments in PERS's brief is that diabetes is a disease which can be managed and if properly managed, one can live a relatively normal life, and, because Thomas had worked for more than twenty years while inflicted with the disease, it could not be as debilitating as Thomas claimed. As support for this premise, PERS points to the testimony and medical records which show that Thomas had been treated for the disease since 1973 and continued to work until 1997. Even if the premise were true in every respect, that does not negate the fact that Thomas testified that in 1997 he had become disabled as a result of the disease, and Dr. Crump's medical statement in effect said the same thing.
¶ 17. In its brief, PERS attempts to discount the probative value of Dr. Crump's statement by pointing out that the statement was given more than a year after Thomas's application for benefits. The problem with this argument is that Dr. Crump's statement was considered, and even cited, by the disability appeals committee.
¶ 18. Dr. Crump gave two statements, the first one was given on April 21, 1998, *695 on PERS's standard form entitled "Statement of Examining Physician." On this form, Dr. Crump stated:
Ocenious Thomas has been followed in our clinic since 1986 for insulin dependent diabetes. Within recent years he has developed diabetic retinopathy, and neuropathy. He also suffers from hyperlipidemia. Mr. Thomas's most significant current and chronic problems are his diminishing vision stemming from his retinopathy, constant pain and numbness to his lower extremities secondary to peripheral neuropathy and peripheral vascular disease which nearly resulted in loss of his right foot in 1991. His difficulty [with] standing for any considerable length of time, balance/gait problem with ambulation and diminishing vision have significantly compromised his ability to maintain employment.

(emphasis added).
¶ 19. The second statement from Dr. Crump came in the form of a letter dated August 25, 1998. In the letter, Dr. Crump wrote:
Mr. Thomas is a 55 year old black male who is presently under my medical care with multiple complicated diagnoses. He is an insulin dependent diabetic which has affected his vision, hearing, nerves, and peripheral vascular circulation. He experiences difficulty standing and ambulation due to neuropathy. He also has a gait imbalance disorder. His vision is impaired secondary to his retinopathy. His hearing is impaired due to neuropathy. His Otolaryngology physician, Dr. Brown Robertson, should be able to provide documentation regarding his hearing impairment.
Mr. Thomas is certainly not physically able to continue with employment. From a medical standpoint, under no circumstances will I give Mr. Thomas a medical release for employment.

(emphasis added).
¶ 20. The decision of the medical board was rendered on July 28, 1998. Therefore, the medical board could not have initially considered the August 25, 1998 statement. However, the record indicates that the August 25, 1998 letter, along with the notice of appeal, was received on August 31, 1998, and that the letter, along with all other medical evidence, was again reviewed on September 27, 1998. The medical board confirmed its initial decision to deny benefits. The decision of the disability appeals committee was rendered on November 13, 1998, and the decision of the Board of Trustees of PERS was rendered on December 18, 1998. Therefore, it is clear that the August 25, 1998 letter was considered by each of the three entities charged with a role in processing Thomas's application. If PERS believed that the letter came too late or related to a condition that had developed after Thomas's decision to retire, it certainly could have said so, but it did not. Therefore, we have to conclude that the medical assessment contained in the letter was considered by PERS to be relevant to its inquiry.
¶ 21. PERS also argues in its brief that Thomas indicated on his application that he was not compelled to terminate his employment because of his illness. Apparently, PERS now wants to advance the notion that this fact should somehow inure to its benefit respecting its decision to deny benefits. We have reviewed the application, and it does reflect that Thomas answered "no" to the following question: "Were you compelled to stop work because of your present illness?" Obviously, this was an error on Thomas's part. It makes no sense to make an application for disability benefits because of an illness and then indicate that the illness was not the reason *696 for the disability. Further, Thomas made it clear in the hearing before the disability appeals committee that his illness was the reason for his terminating his employment and seeking disability benefits. At that time, he was not questioned regarding the discrepancy on the application.
¶ 22. An administrative body makes an arbitrary and capricious decision when an agency makes a decision unsupported by evidence. Davis v. Public Employees' Ret. Sys., 750 So.2d 1225, 1230 (Miss.1999). An act is arbitrary when it is not done according to reason or judgment, but depending on the will alone. Burks v. Amite County Sch. Dist., 708 So.2d 1366, 1370 (Miss.1998). An act is capricious when done without reason, in a whimsical manner, implying either lack of understanding or a disregard for the surrounding facts and settled controlling principles. Id.
¶ 23. It is the view of this Court that there is a lack of substantial evidence to support PERS's decision. While PERS was entitled to be skeptical of Thomas's testimony or even differ with Dr. Crump's conclusion that Thomas is disabled, we find nothing in the record disputing or contradicting the evidence presented by Thomas. Therefore, we cannot find the substantial evidence upon which PERS could have relied. PERS would have been entitled to choose between different pieces of evidence or competing views on the same piece of evidence. However, it was not entitled to reject the only evidence presented when no contrary view of that evidence was offered, unless the offered evidence is so absurd or unbelievable that no reasonable person could believe it. We do not find that to be the case with the evidence offered by Thomas. In this regard, we note that under the authority of Mississippi Code Annotated Section 25-11-113(1)(c) (Rev.1999), PERS could have had other physicians to conduct an evaluation of Thomas's condition. Had that been done, and the other physicians presented a view which contradicted the conclusion reached by Dr. Crump, we would be duty bound to give deference to the view adopted by PERS, but that was not done. Accordingly, for the reasons presented, we affirm the decision of the trial court reversing the decision of PERS denying benefits.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY REVERSING THE DECISION OF PERS AND HOLDING THAT THE APPELLEE IS ENTITLED TO DISABILITY BENEFITS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, P.J., PAYNE, BRIDGES, THOMAS, LEE, MYERS and CHANDLER, JJ., concur. SOUTHWICK, P.J., dissents with a separate written opinion joined by McMILLIN, C.J.
SOUTHWICK, P.J., dissenting
¶ 25. The majority finds the decision denying disability benefits not to be supported by substantial evidence. With respect, I suggest that is the wrong standard. The appeals committee found that the claimant failed to carry his burden of proof on disability. The committee did not need nor was there any procedure to receive substantial evidence of non-disability. What is necessary is a reasoned, non-arbitrary decision that substantial evidence of disability had not been presented.
¶ 26. However, I agree with the majority that the decision that we are reviewing is defective. There is not an explanation as to why Thomas's evidence did not prove disability. The decision was based on the medical knowledge of the physicians on the committee, but we do not have the benefit *697 of an explanation of the use of that knowledge. In essence the committee found that the defects in the evidence speak for themselves. I would enter an order requiring supplemental findings explaining the inadequacies that allegedly existed in the claimant's proof.
McMILLIN, C.J., joins this separate opinion.