968 So.2d 510 (2007)
PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Appellant
v.
Sara G. McCLURE, Appellee.
No. 2005-CC-02189-COA.
Court of Appeals of Mississippi.
May 15, 2007.
Rehearing Denied September 4, 2007.
*511 Office of the Attorney General by Mary Margaret Bowers, attorney for appellant.
Sara G. McClure, Appellee, pro se.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. The Public Employees' Retirement System of Mississippi (PERS) appeals the Hinds County Circuit Court's decision to award disability retirement benefits to Sara McClure. This decision reversed a finding by the PERS Board of Trustees that McClure was not disabled. Finding no error in the trial court's decision to reverse the PERS determination, this Court affirms the award of disability benefits.

FACTS
¶ 2. Sara McClure was employed as a special education teacher for more than twenty-eight years. For twelve of these years, she taught developmentally delayed children ages three to five years old in the Clarksdale, Mississippi Public School District. Because of her increased problems with blood pressure and diabetes, McClure applied for Regular Age Limited Disability benefits with the Public Employees' Retirement System[1] in November 2000. McClure testified that, although she loved her job, she no longer believed her health would allow her to continue employment at the school. She feared her health would continue to decline and she was not as effective as she had once been. McClure noticed she was in better control of her health problems when school was out for the summer months.
¶ 3. McClure had an extensive history of medical problems dating back to 1989. McClure was diagnosed with bilateral adrenal hyperplasia, insulin dependant diabetes, and hypertension. The medical records submitted by McClure include a letter from Dr. Charles Nause, McClure's long-time primary physician. In his letter, Dr. Nause recommended that McClure stop teaching because high stress levels associated with her job were compromising her health. Dr. Nause stated, "Sarah has been a patient of mine for nearly ten years  I do think her job is contributing to instability in her medical condition and leading to continued deterioration of her health. I recommend that she not work as a result of her illness that she suffers from."
*512 ¶ 4. Shirley Morris, McClure's principal, supported McClure's disability claim as well. Morris often made accommodations for McClure during the school work days by allowing her to come to work late on days when her blood sugar level was severely elevated. Morris also allowed McClure to rest during the school work day by allowing her to lie down while the students took their afternoon naps.
¶ 5. McClure testified that, during the fall semester prior to filing her appeal, she missed twenty-two days[2] of work due to illness. On one particular occasion in August 2001, McClure's blood pressure reached 240/110 while she was at work. She experienced numbness on her face as well as specks of blood surfacing on her arms. McClure was made to rest on the floor in hopes that her blood pressure would lower. Later, she was hospitalized for several days. She continued to experience medical problems as a result of the severely elevated blood pressure level.
¶ 6. On February 8, 2001, PERS's medical board denied McClure's claim, and she appealed this decision before the Disability Appeals Committee. The Disability Appeals Committee made a recommendation to the PERS Board of Trustees to deny McClure's request for disability. In their findings, the Appeals Committee acknowledged that McClure had a history of unregulated blood sugar and blood pressure levels, despite her compliance with her doctor's treatment. However, the Committee noted that McClure had not terminated her employment at the time she filed her appeal and was still performing her work duties. The Committee expressed "great concern" about McClure's medical treatment plan and believed that McClure's health situation would only improve with appropriate treatment from a hypertension expert. The committee noted the following in its findings:
There will always be swings in [McClure's] blood sugar of 70-400, but she is now able to work and with proper management, she will continue to be able to work. We believe staying at home is not a proper management program. The current lack of medical management does not have to be a permanent situation.
¶ 7. The Committee did not believe the evidence supported finding McClure was disabled. The Committee reasoned that a hypertension specialist would be able to evaluate McClure and place her on a better treatment program that would improve her health.
¶ 8. The PERS Board of Trustees adopted the recommendation of the Disability Appeals Committee to deny McClure disability benefits. On January 9, 2002, McClure appealed the Board's decision to the Hinds County Circuit Court. The circuit court reversed the order of the PERS Board of Trustees, finding McClure presented sufficient evidence to support her disability claim. The court found PERS's decision to deny disability benefits was arbitrary and capricious because it was not supported by substantial evidence. According to the court, the record was clear that McClure was unable to perform her employment duties and she continued to struggle with her health, despite her medication. The court made note that McClure's treating physician and employer verified her health claims as well. PERS timely filed this present appeal of the circuit court's decision.

*513 STANDARD OF REVIEW
¶ 9. This Court is held to the same standard as lower courts when reviewing administrative agency decisions. Miss. Sierra Club, Inc. v. Miss. Dep't of Envtl. Quality, 819 So.2d 515, 519(¶ 15) (Miss.2002). We do not re-weigh the facts of the case. Public Employees Ret. Sys. v. Shurden, 822 So.2d 258, 263(¶ 13) (Miss. 2002). We may only "review an administrative agency's order to determine whether the order was (1) supported by substantial evidence, (2) arbitrary or capricious, (3) beyond the power of the lower authority to make, or (4) violated some statutory or constitutional right of the complaining party." Public Employees' Ret. Sys. v. Burt, 919 So.2d 1150, 1156(¶ 16) (Miss.Ct. App.2005).
¶ 10. We perform a limited appellate review of agency decisions but the Court is not subjected to "wearing blinders." Public Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1284(¶ 15) (Miss.2005). An agency's decision will be deemed arbitrary and capricious if it is not based on substantial evidence. Public Employees' Ret. Sys. v. Allen, 834 So.2d 50, 53(¶ 10) (Miss.Ct.App.2002). Substantial evidence is defined as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Shurden, 822 So.2d at 264(¶ 14).

ANALYSIS
Whether the circuit court err in finding that PERS acted arbitrarily and capriciously in denying McClure's claim for disability benefits.
¶ 11. PERS alleges the trial court did not have authority to reverse the denial of McClure's request for benefits because PERS's decision was supported by substantial evidence and it was not arbitrary or capricious. The PERS Disability Appeals Committee, comprised of two physicians and one nurse/attorney, reviewed McClure's medical reports and determined there was a lack of evidence to support McClure's claim of disability. PERS argues the trial court erred by impermissibly re-weighing the evidence in finding that McClure presented sufficient evidence of disability.
¶ 12. McClure contends that she presented sufficient evidence of disability and that the PERS Board's decision denying disability benefits was not supported by substantial evidence in the record. According to the appellate record, McClure's examining physician, Dr. Nause, and her employer, Morris, indicated McClure could no longer perform her employment duties because the work was compromising her health. McClure argues that PERS presented no contradictory evidence that suggests McClure is not disabled, and therefore, the decision to deny benefits is arbitrary and capricious.
¶ 13. The law does not require PERS to present evidence to contradict McClure's assertions of disability, however, PERS decisions must be based on substantial evidence, as it is found in the record. Public Employees' Ret. Sys. v. Thomas, 809 So.2d 690, 694(¶ 14)(Miss.Ct.App.2001).
¶ 14. The PERS Medical Board applies the following definition to determine disability:
[T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment by the Public Employees' Retirement System (Section 25-22-101 et seq.) that is actually offered and is within the same general *514 territorial work area, without material reduction in compensation.
Miss.Code Ann. § 25-11-113(a)(Rev.2006).
¶ 15. McClure provided very detailed testimony and medical records that she suffered from bilateral adrenal hyperplasia, insulin dependant diabetes and hypertension. These illnesses prevented her from performing "the usual duties of her employment." McClure testified that she is no longer effective on her job, despite the fact that she was proactive in treating her illnesses. At her job, McClure was responsible for the basic care of three and four year old, developmentally delayed children and she had to perform tasks ranging from feeding the children to lifting the children up and changing their diapers. McClure testified that she felt better in the summer time when school was out because those times gave her opportunities to relax from the stresses of her job. During the school year, she only had the opportunities to rest on the weekends, rarely enough time for her body to recuperate from a stressful week. Besides her work at school, McClure noted that her housework at home had suffered because of her illnesses as well.
¶ 16. McClure also presented evidence that her employer could not offer her any comparable employment "without material reduction in compensation." McClure's principal, Morris, indicated that the school could offer "no accommodations for the job that Mrs. McClure [was] trained to do."
¶ 17. The PERS Appeals Committee made findings that McClure was not disabled solely from reviewing McClure's medical records and other documents filed with her disabilities request. Although Section 25-11-113 allows the PERS Medical Board to conduct an actual physical examination of the claimant, neither the PERS medical board nor any independent physician examined McClure. Dr. Nause, McClure's physician for nearly ten years, presented the only opinion in the record.
¶ 18. PERS did not question Dr. Nause's treatment of McClure. The board simply believed that a hypertension specialist would present a better course of treatment. Nothing in the record substantiates this belief. The medical board physicians made the following finding:
Obviously, from the medical records, most of Dr. Nause, a real problem exists with the management of Ms. McClure's hypertension and diabetes. We recognize from Ms. McClure's testimony that she has seen Dr. Goodman for regulation of her diabetes and we applaud her for this. But we have great concern about the total treatment that Ms. McClure is receiving. We understand that medications treating diabetes adversely affect blood pressure medicines and vice versa. While we have no complaints with Dr. Nause, we do believe that Ms. McClure would benefit from a total evaluation by a hypertension expert. Hypertension experts generally have a better overall treatment plan. We note that Ms. McClure is functioning at her job now, but it is our opinion that the situation should only improve with appropriate treatment.
¶ 19. PERS does not offer any medical evidence that suggests the alternative treatment would, in fact, restore McClure to a level of functioning capacity. PERS relies on evidence that hypertension experts "generally have a better overall treatment." The board, in its findings, acknowledged that McClure had previously been examined by Dr. Goodman of Memphis, TN, who is a diabetes expert. According to McClure's testimony, she began seeing Dr. Goodman in 1989 and he developed a treatment plan which Dr. Nause would assist in implementing. PERS now argues that this treatment is *515 ineffective and McClure would be better served by finding a hypertension specialist. PERS's argument is based chiefly on its finding that "medications treating diabetes adversely affect blood pressure medicines and vice versa."
¶ 20. This Court has previously found that the evidence relied on by PERS's in disability determinations cannot be established solely "within the confines of the doctors' heads." Thomas, 809 So.2d at 694(¶ 14). In Thomas, this Court rejected PERS argument that the claimant was not disabled due to the belief that diabetes was a manageable disease, if properly managed, and because the claimant had functioned so long with the disease, the disease must not have been as debilitating as claimed. Id. at 694(¶ 16). This Court acknowledged that, while PERS has the power to weigh witness testimonies, even to the point of disagreeing with assessments, the record must contain substantial evidence upon which PERS relies. Thomas, 809 So.2d at 696(¶ 23).
¶ 21. In this present appeal, PERS's finding that McClure should improve with the treatment of a hypertension specialist is a determination made without the benefit of an actual physical examination. PERS does not reference any evidence, medical or otherwise, found within the confines of the record which support this general assertion.
¶ 22. The supreme court has also held "PERS cannot choose to ignore the only evidence in the record from the examining physician, especially where it chose not to exercise its right to an independent medical evaluation" under Section 25-11-113(1)(c). Public Employees' Ret. Sys. v. Dearman, 846 So.2d 1014, 1018(¶ 11) (Miss.2003). Although PERS uses its Medical Board and Disability Appeals Committee as fact finders in disability determinations, "their opinions [are] not conclusive." Id. at 1018(¶ 11). "The lack of substantial evidence supporting the decision to deny permanent disability benefits [will] render the decision arbitrary and capricious." Id. at 1018(¶ 12). ¶ 23.
¶ 23. The evidence in this case does not support PERS's decision to deny McClure disability benefits. McClure presented sufficient evidence that she satisfied the disability requirements under the statutory definition. The PERS medical board did not conduct an independent examination of McClure and failed to provide any contradictory testimony to that of her physician who treated her for over ten years. This Court has previously found that PERS could not reject the only evidence of disability presented by the claimant when there is "no contrary view of the evidence offered" unless the offered evidence was so outrageous or absurd that no reasonable person would believe it. Thomas, 809 So.2d 690 at 696(¶ 23).
¶ 24. We may not substitute our judgment for that of PERS, and we may only review its decisions if there is a finding that the decision was (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) reached beyond the scope or power given to PERS, or (4) in violation of one's constitutional rights. Public Employees' Ret. Sys. v. Stamps, 898 So.2d 664(¶ 27) (Miss.2005). We find PERS's decision to deny McClure disability benefits was unsupported by substantial evidence and arbitrary and capricious. We have not re-weighed the facts of the case and neither do we find the trial court re-weighed the facts. We have examined the actual evidence in the record, as opposed to the ideas that maybe secreted in the minds of others. For these reasons, we affirm the trial court's decision which reversed the PERS decision to deny McClure benefits.
*516 ¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
GRIFFIS, J., Dissenting.
¶ 26. I respectfully disagree with the majority. In my opinion, the majority errs by reweighing the evidence and substituting its judgment for that of PERS. I am of the opinion that the PERS finding was based on substantial evidence.
¶ 27. In Pub. Employees' Ret. Sys. v. Cobb, 839 So.2d 605, 609(¶ 12) (Miss.Ct. App.2003), a unanimous Court of Appeals held:
In administrative matters, the agency, and not the reviewing court, sits as finder of fact. Metal Trims Indus., Inc. v. Stovall, 562 So.2d 1293, 1296 (Miss. 1990). That fact-finding duty includes assessing the credibility of witnesses and determining the proper weight to give to a particular witness's testimony. Walker Mfg. Co. v. Butler, 740 So.2d 315(¶ 46) (Miss.Ct.App.1998). A reviewing court is obligated to afford such determinations of credibility in the fact-finding process substantial deference when reviewing an administrative determination on appeal and the court exceeds its authority when it proceeds to re-evaluate the evidence and makes its own determination of the trustworthiness of some particular testimony. Smith v. Jackson Const. Co., 607 So.2d 1119, 1123-24 (Miss.1992).
¶ 28. In this case, the question before PERS was whether McClure's claim met the statutory requirements for the receipt of disability benefits. PERS's decision was to deny benefits. To support this decision, PERS looked at numerous medical tests and evaluations that McClure had undergone. The medical file contained many reports of lab results, including pathology reports, echocardiograms, cytology results, imaging reports and various other reports that require medical expertise to analyze and understand the diagnosis. Five different physicians reviewed the reports in McClure's file. These physicians had the medical training to read and assess these reports. Thus, the five physicians had the "fact-finding duty [which] includes assessing the credibility of witnesses and determining the proper weight to give to a particular witness's testimony." Id.
¶ 29. McClure contends, and the majority agrees, that it is her treating physician who recommended disability retirement and that PERS did not put on contradictory medical testimony to refute her physician. The majority ignores the fact that the statutory creation of the PERS Medical Review Board was to allow medical expertise at the administrative agency to analyze the medical evidence presented in order to determine whether it supported the claimant's claim for disability. The majority's opinion ignores the expertise represented on this Board.
¶ 30. In Cobb, former Chief Judge Roger McMillin aptly concluded for this Court:
The requirement of "substantial evidence" seems satisfied, however, in such instance by an appellate determination that the agency's conclusion that the claimant's evidence was so lacking or so unpersuasive that she failed to meet her burden appears a reasoned and unbiased evaluation of the evidence in the record. *517 In that circumstance, in something of a paradox, the lack of evidence at the agency level becomes the substantial evidence on appellate review that suggests the necessity of affirming the agency's determination. On that basis, we find that the record amply supports the Board's findings that Cobb failed to meet her burden of showing her eligibility for disability retirement.
Id. at 609-610(¶ 16). PERS does not have to put on contradictory evidence. Indeed, the medical evidence supported a conclusion that McClure was not disabled.
¶ 31. The evidence indicates that PERS properly considered the testimony and medical documentation. PERS specifically noted the following facts:
As of the date of this hearing, Ms. McClure continues her employment with Heidelberg Schools teaching three and four year old developmentally delayed children. She testified she loves her job but she is afraid that because of her medical problems, she is going to have a stroke. She testified that she is not as effective in the classroom as she used to be but that she has a very understanding principal.
She testified that she doesn't ever feel well. She is tried and weak and it gets more and more difficult to control her blood sugar. She has better control of her blood pressure and blood sugar over the summer when she gets more rest. Ms. McClure testified about her knowledge of her diseases and her medications. This Committee was certainly impressed with her understanding of both and her compliance with her current treatment. We note she is on the following medications:
Humulin N insulin 36 unites every morning;
Humulin R insulin 22 unites every morning;
Lantus insulin 30 units every evening;
Glucovance 25 500 mg. Twice a day;
Tiazac 240 mg. Each day;
Lasiv 40 mg. Twice a day;
Avalide 300 mg + 25 each day;
Aldactone 1 twice a day;
Tenex 1 mg. Each day
Zaroxolyn 25 mg. Each day;
Celebrex 200 mg. Each day;
Ms. McClure's primary physician is Dr. Charles Nause and Ms. McClure has produced records dating back to November of 1993. Early on, she was treated for routine infections and a thyroid cyst, but throughout, Ms. McClure's blood pressure and blood sugar have not been regulated. In 1999, and early 2000, it appears from Dr. Nause's records that Ms. McClure's blood pressure was under better control but her blood sugar appears fairly consistently elevated (R. 26-32). Thereafter, it appears that muscle complaints developed and neither Ms. McClure's blood pressure or blood sugars were adequately controlled (R. 11-25). Ms. McClure was subsequently diagnosed with adrenal hyperplasia.
While we do not have the records, Ms. McClure saw Dr. Goodman in Memphis, TN, as he is an expert in diabetes. Dr. Goodman developed Ms. McClure's basis diabetic plan and referred her back to Dr. Nause for implementation.
Records introduced by Ms. McClure at the hearing include the most recent medical reports from Dr. Nause basically providing documentation of her current medical situation. Also enclosed is correspondence requested by Ms. McClure of Dr. Nause regarding his opinion of disability. Lastly, provided are the 22 dates of school absences this fall semester. One of those being a *518 hospitalization to regulate her diabetic and blood pressure medication.
PERS then determined that:
Ms. McClure has the burden of persuading that she is disabled at least at the time of this hearing since she continues employment with Heidelberg Schools. This claim is difficult because of the medical issues involved and the fact that Ms. McClure continues to work. The Committee understands Ms. McClure's claim that since her diabetes and hypertension are currently uncontrolled, she is requesting to be determined disabled.
Obviously, from the medical records, mostly of Dr. Nause, a real problem exists with the management of Ms. McClure's hypertension and diabetes. We recognize from Ms. McClure's testimony that she has seen Dr. Goodman for regulation of her diabetes and we applaud her for this. But we have great concern about the total treatment that Ms. McClure is receiving. We understand that medications treating diabetes adversely affect blood pressure medicines and vice versa. While we have no complaints with Dr. Nause, we do believe that Ms. McClure would benefit from a total evaluation by a hypertension expert. Hypertension experts generally have a better overall treatment plan. We note that Ms. McClure is functioning at her job now, but it is our opinion that the situation should only improve with appropriate treatment. We do not believe the evidence supports disability we believe with proper treatment, she will only improve the situation. Ms. McClure is intelligent and motivated and we believe that with a proper medication program her medical conditions are truly manageable. There will always be swings in her blood sugar of 70-400, but she is now able to work and with proper management she will continue to be able to work. We believe staying at home is not a proper management program. The current lack of medical management does not have to be a permanent situation.
In summary, Ms. McClure is bright, articulate, motivated and loves her job. She suffers from symptoms of uncontrolled hypertension and diabetes. Based on our review of the evidence and in light of the testimony, we believe that Ms. McClure's medication program is not addressing the need to control her diabetes and hypertension. It is our opinion that a hypertension specialist would be able to evaluate Ms. McClure and place her on a proper program. We do not believe the evidence supports disability and we believe with proper treatment, she will only improve the situation.

(Emphasis added).
¶ 32. I am of the opinion that PERS, through its medical doctors, were in a far better position to evaluate McClure's medical history and the evidence presented. Indeed, my reading of the decision leads me to conclude that PERS's physicians determined that McClure simply needed treatment to resolve her problems. PERS's decision was based on its review of the evidence, and its physicians' medical knowledge and expertise. The circuit court and this Court are required to give deference to the PERS decision.[3] We cannot *519 substitute our judgment, and we must not reweigh the facts. Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1284(¶ 15) (Miss.2005). I respectfully dissent from the majority's decision to affirm the circuit court. I would reverse the circuit court and reinstate PERS's ruling.
NOTES
[1] At the time McClure filed for disability, she had accumulated 10.25 years of retirement eligibility.
[2] The record indicates that from August 8, 2001 until December 7, 2001, McClure missed the following days of work: August  one half a day, September  three days, October  fourteen days, November  three days, and December  one and a half days, for a total of twenty-two days of absence.
[3] In Pub. Employees' Ret. Sys. v. Howard, 905 So.2d 1279, 1287-88(¶ 23) (Miss.2005), the Mississippi Supreme Court held:

The Medical Board which denied Howard's claim was made up of three physicians. The Appeals Committee which agreed with that determination included two physicians. Sorting through voluminous and contradictory medical records, then determinating whether an individual is permanently disabled is better left to physicians, not judges. This is the idea behind the creation and expansion of administrative agencies. "The existence within government of discrete areas of quasi-legislative, quasi-executive, quasi-judicial regulatory activity in need of expertise is the raison d'etre of the administrative agency." McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 323 (Miss. 1992). "Because of their expertise and the faith we vest in it, we limit our scope of judicial review." Id.