BARNES, J„ for the Court:
¶ 1. The Mississippi Public Employees’ Retirement System (PERS) appeals the decision of the Hinds County Circuit Court to reverse the PERS Board of Trustees’ (Board of Trustees) denial of non-duty related disability benefits to Gloria Lang. We find that both the Board of Trustees and the circuit court used an incorrect date for determining disability. The Board of Trustees used Lang’s last day of work, October 25, 2007; the circuit court used a date six months thereafter. Lang, however, was on an unpaid leave of absence and continued to be an employee until after the date of the hearing. Accordingly, we reverse the circuit court’s judgment and remand the case to the PERS Disability Appeals Committee (Appeals Committee) for a hearing to determine whether Lang was disabled as of the date all of her medical records were introduced and her case closed.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Lang was a corrections officer for the Mississippi Department of Corrections (MDOC) with approximately 23.25 years of service credit. At the time this appeal was filed, she was approximately fifty-five years old. She worked at the state peni *857 tentiary in Parchman, Mississippi, for eight years, and before that, she was an assistant teacher in the public school system. At Parchman, she worked in a two-story building where the transient inmates are housed. Lang had to perform four counts per day of the inmates in her unit. Lang stated that climbing the stairs in the building for the counts caused pain to her back, ankles, and knees.
I. Medical Evidence
¶3. The medical records reviewed by the PERS Medical Review Board began in January 2005, when Lang had an MRI for complaints of neck and left-shoulder pain. The test showed some degenerative narrowing of several cervical and two thoracic vertebrae, and spondylosis. Dr. Remi Nader, a neurologist, saw Lang in April 2006 for complaints of lower-back and left-ankle pain. In April 2007, Lang saw her nurse practitioner for neck pain, left-ankle pain, and complaints that she was under a lot of stress. An MRI in August 2007 showed no significant bulging or herniation of the lumbar spine.
¶ 4. In October 2007, Lang had an x-ray and another MRI for knee and back pain. Lang was again referred to Dr. Nader, complaining of lower-back and neck pain, as well as left-ankle and right-knee pain. Lang said the pain in her neck and back had been present for approximately two years. Dr. Nader told Lang her neck was worse than her back and diagnosed her with lumbar and cervical spondylosis, and “lower extremity radiculopathy,” as well as “musculoskeletal pain in the right knee and left ankle with left ankle Vargus deformity.” At this time, Dr. Nader noted a “trial of conservative management” would be pursued.
¶ 5. Dr. Nader removed Lang from work at Parchman on October 25, 2007. Lang has not returned to work since then. Lang testified that she left work due to orthopedic reasons; specifically, lower-back pain. An MRI in November 2007 showed “disc degeneration with spondylo-sis, and secondary spinal stenosis,” but no bulging discs. Also in November 2007, Lang was referred to Dr. Karen Plunkett for tingling down her left arm; however, a test found no weakness in the left-upper extremities. Lang was referred to Dr. Bennett for her ankle pain. He stated that while Lang’s x-rays were normal, she did have “stage 2 posterior tibial tendon dysfunction.” In January 2008, Lang saw Dr. Nader again for neck issues. Surgery was discussed, but Lang wanted to try physical therapy first.
¶ 6. On January 15, 2008, Lang applied for disability retirement benefits, claiming she was disabled due to a “degenerative/bulging disc.” Lang decided to undergo a cervical fusion by Dr. Nader, which was performed on March 11, 2008. On April 2, 2008, Dr. Nader completed a PERS Form 7 “Statement of Examining Physician” stating Lang had a “fair prognosis” and that he anticipated a “partial recovery.” He listed impairments in the “lower extremity and gait,” but stated Lang was not at maximum medical improvement. He was unable to say whether permanent partial impairments would exist.
¶ 7. In April 2008, one month after Lang’s neck surgery, an independent medical exam was performed on Lang by Dr. David Collip. He noted Lang was obese, and provided an “incomplete effort on her physical examination.” She had lumbar and cervical degenerative disc and joint disease; however, Dr. Collip concluded Lang was “physically able to perform a minimum of light-medium duty [work], with a maximum lift of thirty pounds, and she has room for physical improvement over the next year.”
*858 ¶ 8. In mid-June 2008, Dr. Nader saw Lang again, and noted that Lang was doing well three months after the neck operation. In July 2008, Lang went to Greenwood Orthopedic Clinic for complaints of right leg and knee pain. She was diagnosed with right-knee arthritis and prescribed physical therapy and medication. It was noted that since Lang had been newly diagnosed with diabetes, she could not take any more cortisone injections.
¶ 9. In August 2008, Lang saw a physical-medicine doctor, on referral from Dr. Nader, for throbbing back pain that she stated had been present for years. An MRI showed “degenerative facets” of the lumbar vertebrae causing “moderate canal stenosis and asymmetrical bulging.” The physician decided on conservative measures to treat Lang’s pain.
¶ 10. In September 2008, Lang went to the Charleston Clinic complaining of lower-back pain, right-knee pain, and right-calf swelling. A blood test revealed Lang was not controlling her diabetes. In January 2009, it appears that Lang saw Dr. Nader, who filled out a “Physician Certification for Medical Leave Request” form stating she had “lumbar spondylosis with radiculopathy.” Dr. Nader also filled out a “Certificate to Return to Work or School” stating Lang was “unable to work at her current job,” and had a “permanent disability with 8% whole body impairment based on [American Medical Association] guidelines.” In March 2009, Lang returned to the Charleston Clinic complaining of right-thumb arthritis. In April 2009, she returned to the clinic complaining of being tired all of the time, joint pain, and struggling to breathe; so a new “CPAP mask” was ordered.
II. Procedural History
¶ 11. In June 2008, the PERS medical review board denied Lang disability benefits. In September 2008, at the hearing before the Appeals Committee, action on Lang’s claim was deferred because the Appeals Committee requested supplemental medical records. At the hearing on June 12, 2009, the supplemental medical records were presented to the Appeals Committee for its consideration. In its proposed findings of fact, conclusions of law, and recommendation of the same date, the Appeals Committee determined that “Lang’s degenerative disease is not severe enough to support her claim for disability,” and recommended the Board of Trustees deny Lang's claim. However, the Appeals Committee explained that it based its findings on whether a disability existed on Lang’s last day at work in October 2007. In August 2009, the Board of Trustees accepted the Appeals Committee’s findings and recommendation. Lang then appealed to the Hinds County Circuit Court.
¶ 12. In November 2009, the MDOC terminated Lang after determining she had “a disability which prohibits [her] from performing the job related requirements and essential functions of [her] position. It has also been determined that there is not a reasonable accommodation which [the MDOC] could make without causing [the department] an undue hardship.”
¶ 13. In June 2010, the circuit court reversed the Board of Trustees’ decision, finding error with the Appeals Committee’s emphasis on Lang’s back as her “defined disability.” The circuit court found that the proper analysis was to “consider all of Lang’s illnesses and/or disabilities as they existed from the date she stopped working [ (October 25, 2007) ], and six months thereafter to make a determination of disability.” PERS appealed raising one issue: whether the Board of Trustees’ denial of disability benefits to Lang was supported by substantial evidence and was not arbitrary and capricious.
*859 ¶ 14. This Court entered an order for supplemental briefing regarding: the date upon which Lang’s disability should be determined; whether Lang was an active or inactive member in state service; if she was an inactive member, her date of termination or withdrawal from state service; and the applicability of Public Employees’ Retirement System v. Card, 994 So.2d 239 (Miss.Ct.App.2008), to this case. In Card we had determined that the PERS disability committee erred in failing to consider an impairment that occurred after the claimant’s last day of work but while she was on medical leave. Id. at 245 (¶ 29).
ANALYSIS
¶ 15. The Appeals Committee recommendation to deny benefits stated, without citation to authority, that Lang’s disability claim must be determined from the last day she worked, or October 25, 2007. Accordingly, the Appeals Committee based its findings on this date. In its very thorough and detailed findings of fact and conclusions of law, the Appeals Committee stated:
Lang’s degenerative disease is not severe enough to support her claim for disability. There are opposing medical opinions about whether Ms. Lang is able to perform her job. We note that Dr. Nader has recently written that she is disabled. (January 15, 2009, Medical Leave Request form). But the evidence supporting his opinion is not clear cut. In fact, it seems to this Committee that Ms. Lang left work because of back pain and ended up with neck surgery when there was no apparent herniated disc or severe stenosis. Now, Dr. Nader says she is disabled because of back pain and she says her knees are her main problem because she is not able to climb stairs. And, for the purposes of PERS, the defined disability must have been the reason that Ms. Lang left work back in October of 2007. Dr. Nader removed her from work because of her neck. Now, he says she is disabled because of her back. The MRIs show moderate disease.... But even considering these problems [ (obesity, diabetes, sleep apnea) ] in combination with Ms. Lang’s orthopedic problems, to say that Ms. Lang was disabled at the time she left her job in October of 2007 is not supported by the body of evidence ....
(Emphasis added.) The Appeals Committee concluded that Lang had not persuaded it that “she was permanently and likely totally disabled when she left her job.” (Emphasis added.)
¶ 16. The circuit court stated, also without citation to authority, that the Appeals Committee should have considered Lang’s illnesses as of the date she stopped working and six months thereafter to determine disability. Accordingly, the circuit court reversed the decision of the Board of Trustees and remanded for further proceedings. The circuit court appeared to consider Lang an “inactive” member of state service, and thus used section 25-11-113(l)(b) to determine her date of disability.[1] The circuit court apparently considered Lang’s “termination” from active service as the date she left work in October 2007.[2] Regardless, both parties agree that *860 Lang applied for disability benefits as an active member in January 2008, under section 25 — 11—113(l)(a),[3] which provides disability benefits for employees who have worked in state service for a certain amount of time, and who are found disabled as defined by the statute.
¶ 17. We find Public Employees’ Retirement System v. Card, 994 So.2d 239 (Miss.Ct.App.2008) instructive. In that case, claimant Mary Card applied for hurt-on-the job disability retirement benefits in December 2002 for carpal-tunnel syndrome. Card, 994 So.2d at 241 (¶¶ 5-6). The Appeals Committee denied this claim and also regular disability under section 25 — 11—113(l)(a). Card, 994 So.2d at 240 (¶ 1). Card appealed to the circuit court, which affirmed the denial of hurt-on-the-job benefits, but reversed the Board’s denial of regular disability benefits. Id. During the course of the proceedings, Card had remained on leave without pay. Id. at 244 (¶27). In March 2003, after Card’s last day of work, but prior to her hearing before the Appeals Committee, Card had heart-bypass surgery which caused her vocal cords to become temporarily paralyzed. Id. at 241 (¶ 9). In denying Card regular disability, PERS found there was “no objective evidence of carpal tunnel sufficiently significant to warrant permanent disability.” Id. at 242 (¶ 12). Importantly, PERS did not take into consideration Card’s injury to her vocal cords because it occurred well after her last day of work. Id. at 244 (¶ 25). This Court disagreed with that analysis, and found there to be no requirement under section 25 — 11— 113(l)(a) that a claimant’s injury occur while working. Card, 994 So.2d at 244 (¶ 26). Card was still considered an active member of PERS because she was still employed with the University of Mississippi, even though she was on leave without pay.[4] Id. at 245 (¶ 28). Accordingly, this *861 Court found the Appeals Committee erred by not considering Card’s vocal cord impairment. Id.
¶ 18. In its supplemental brief in this case, PERS admits Card was an active member in that she was still employed, even though she was on leave without pay, and had not resigned or been terminated as defined by PERS Regulation 45A(103)(2). Here, we confront the same situation. Lang was still an active member even though she left her job in October 2007, because she was still employed. PERS contends, however, that Card is not applicable here because Lang was not found disabled by the Appeals Committee. PERS claims that while the Appeals Committee’s findings did state Lang had to prove she was disabled when she left work in October 2007, its actual analysis was not limited to that time, because its recommendation takes into account medical records that post-dated her application of disability in January 2008.
¶ 19. From the record, we cannot confirm that the Appeals Committee reviewed medical records after October 2007, as PERS suggests, and found Lang not disabled. The Appeals Committee reiterated only that it found Lang was not disabled “when she left her job.”
¶ 20. PERS suggests, in the alternative, that the matter be remanded to the Appeals Committee for consideration as to whether Lang met the definition of disability as of June 12, 2009, when the last of Lang’s medical records were introduced and the record was closed. We find this suggestion appropriate.[5]
¶ 21. Accordingly, we remand the case to the PERS Disability Appeals Committee for a hearing to determine whether Lang was disabled as of June 12, 2009, because under PERS Regulation 45A(103)(2), a person is still an active member of PERS even if she is on leave without pay.
¶ 22. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED TO THE PERS DISABILITY APPEALS COMMITTEE FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
LEE, C.J., GRIFFIS, P.J., ISHEE, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. RUSSELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J.

. This code section states in pertinent part:
Any inactive member ... who has withdrawn from active state service, is not eligible for a disability requirement allowance unless the disability occurs within six (6) months of the termination of active service and unless satisfactory proof is presented to the board of trustees that the disability was the direct cause of withdrawal from state service.
Miss.Code Ann. § 25 — 11—113(l)(b) (Supp. 2011) (emphasis added).

. Both parties agree that it is unclear from the record when, or if, Lang terminated em *860 ployment and withdrew from state service. According to her testimony, Lang drew sick leave until November or December 2008. After this time, she drew accumulated vacation leave until some time in 2009. " 'Withdrawal from service' or ‘termination from service’ means complete severance of employment in the state service of any member by resignation, dismissal or discharge.’’ Miss.Code Ann. § 25-1 l-103(aa) (Rev.2010). The MDOC terminated Lang from employment at Parchman due to disability on November 6, 2009.

. This code section reads in pertinent part:
[A]ny active member in state service ... may be retired by the board of trustees on the first of the month following the date of filing the application on a disability retirement allowance, but in no event shall the disability retirement allowance begin before termination of state service, provided that the medical board, after an evaluation of medical evidence ... certifies that the member is mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.... For the purposes of disability determination, the medical board shall apply the following definition of disability: the inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation....
Miss.Code Ann. § 25-11-113(l)(a) (Supp. 2011).

. The PERS regulation on termination of service states:
For purposes of determining the effective date of benefits ... termination from covered service shall mean the cessation of the employee-employer relationship as characterized by resignation or termination from employment, with or without cause. While a member may not be performing the duties of the job, if the member has not resigned or been terminated by the employer, the member is still considered employed.... In cases where the member is on authorized leave without pay ... such member is considered an employee of the agency....
PERS Board Regulation 45A(103)(2) (2007).

. The dissent suggests we use the date of Lang's termination, November 6, 2009, as the date for determining disability. We would agree that this date is proper, under the statute, to determine disability; however, this date post-dates all of the hearings and medical records. The final hearing on this matter was June 12, 2009, and no further medical records were entered after this date. No one has requested the record be reopened.