# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-SA-00554-COA

GLORIA LANG                                                           APPELLANT

v.

PUBLIC EMPLOYEES' RETIREMENT SYSTEM                                    APPELLEE
OF MISSISSIPPI

| | |
|---|---|
| DATE OF JUDGMENT: | 04/03/2018 |
| TRIAL JUDGE: | HON. TOMIE T. GREEN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | GEORGE S. LUTER THOMAS UPTON REYNOLDS II |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SAMUEL MARTIN MILLETTE III JANE L. MAPP |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 11/05/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE CARLTON, P.J., WESTBROOKS AND C. WILSON, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    Gloria Lang, a corrections officer with the Mississippi Department of Corrections (MDOC), filed for non-duty-related disability retirement benefits with the Public Employees' Retirement System (PERS). The PERS Board of Trustees (Board)[1] initially denied Lang's application for benefits. Lang appealed the Board's decision, and the circuit court reversed the Board's denial of non-duty-related disability benefits. PERS appealed, and this Court

---

[1] We refer to the PERS Board of Trustees as the "Board" and thereby distinguish our references to the PERS Medical Board.

remanded the matter to the PERS Disability Appeals Committee (Committee) for further proceedings consistent with the opinion.

¶2. Following remand, the Committee held a hearing and ultimately recommended that the Board deny Lang's request for non-duty-related disability retirement benefits. The Board adopted and approved the recommendation of the Committee. Lang appealed to the Hinds County Circuit Court, which affirmed the Board's decision to deny Lang's request for benefits. Lang now appeals, arguing that the Board's decision was not supported by substantial evidence.

¶3. After our review, we find that the Board's decision that Lang was not disabled is not supported by substantial evidence. We therefore reverse and render the circuit court's judgment affirming PERS's order denying non-duty-related disability retirement benefits.

**FACTS**

¶4. In 2010, Lang first appealed PERS's decision denying her application for non-duty-related disability retirement benefits. This Court addressed that appeal in *Public Employees' Retirement System v. Lang*, 104 So. 3d 856, 856 (¶1) (Miss. Ct. App. 2012) (*Lang I*). In *Lang I*, the Committee "determined that 'Lang's degenerative disease is not severe enough to support her claim for disability'" and recommended denial of Lang's claim. *Id*. at 858 (¶11). The Board adopted and affirmed the Committee's findings and recommendation. *Id*. Lang appealed to the circuit court, which reversed the Board's decision. *Id*. at (¶13).

¶5. PERS then appealed, arguing that the Board's denial of disability benefits to Lang "was supported by substantial evidence and was not arbitrary and capricious." *Id*. On

2

appeal, this Court found that the Board and the circuit court used an incorrect date for determining disability. *Id*. at 857 (¶1). The circuit court had considered whether Lang was disabled as of October 25, 2007, the last day she actually worked for MDOC. *Id*. This Court clarified that "under PERS Regulation 45A(103)(2), a person is still an active member of PERS even if she is on leave without pay." *Id*. at 861 (¶21). This Court therefore remanded the case to the Committee for a hearing to determine whether Lang was disabled as of June 12, 2009—the date that the last of Lang's medical records were introduced into evidence and the record was closed. *Id*.

¶6.    In accordance with this Court's guidance upon remand, the Committee held proceedings on May 13, 2013, and September 16, 2013, where it heard additional testimony and reviewed evidence to determine whether Lang was disabled as of June 12, 2009. However, the record reflects no motion by Lang or PERS to reopen the record and add into evidence two documents that were issued after the record was already closed in *Lang I*: (1) the Social Security Administration's November 12, 2009 decision finding that Lang "has been under a disability as defined in the Social Security Act since October 25, 2007, the alleged onset date of disability" and (2) the MDOC's November 6, 2009 termination notice informing Lang that her employment with MDOC was terminated effective November 6, 2009. At oral argument in the present case, PERS confirmed that these two documents were not in the appellate record and were not considered by the Committee or the Board. PERS also confirmed that there was no indication that a motion was made to reopen the record to introduce these two documents into evidence. PERS maintains that the administrative record

was closed as of June 12, 2009.[2]

¶7.     On September 16, 2013, the Committee entered its "Proposed Statement of Facts,

Conclusions of Law, and Recommendation" and recommended that the Board deny Lang's

---

[2] On November 29, 2018, PERS filed a motion to strike portions of Lang's appellate brief and record excerpts. On January 8, 2019, the Mississippi Supreme Court entered an order stating that PERS's motion to strike should be passed for consideration with the merits of this appeal.

In its motion to strike, PERS asserted that Lang's appellate brief references matters outside of the record and attaches documents not included in the record at the administrative hearing or circuit-court level—specifically, the Social Security Administration's November 12, 2009 decision finding that Lang "has been under a disability as defined in the Social Security Act since October 25, 2007, the alleged onset date of disability" and the MDOC's November 6, 2009 termination notice informing Lang that her employment with MDOC was terminated effective November 6, 2009. PERS argues that these two documents are not part of the record on appeal and that the information and attached documents were not part of the record before PERS or the circuit court.

In *Lang I*, Lang appealed PERS's August 2009 decision denying her application for disability benefits to the circuit court. PERS filed a motion in the circuit court seeking to supplement the record. The Social Security decision and termination notice appear in the record on appeal in *Lang I* as exhibits to Lang's reply to PERS's response to her motion to strike the supplemental record.

However, our review of the record in the present case reflects no motion by Lang or PERS to reopen the record. At oral argument in the present case, PERS confirmed that these two documents were not in the appellate record and were not considered by the Committee or the Board. PERS also confirmed that there was no indication that a motion was made to reopen the record to introduce these two documents into evidence. PERS maintains that the administrative record was closed as of June 12, 2009. The Social Security decision and termination notice were issued after the record was already closed.

Mississippi Rule of Appellate Procedure 10(a) sets forth that the record on appeal "shall consist of designated papers and exhibits filed in the trial court, the transcript of proceedings, if any, and in all cases a certified copy of the docket entries prepared by the clerk of the trial court." Subsection (f) further states that neither the parties nor the court may "add to or subtract from the record except insofar as may be necessary to convey a fair, accurate, and complete account of what transpired in the trial court with respect to those issues that are the bases of appeal."

These documents do not appear in the record on appeal in the present case, and the record is clear that PERS and the circuit court did not consider these documents below. We therefore grant PERS's motion to strike portions of Lang's brief that discuss documents not considered by PERS or the circuit court.

4

request for non-duty-related disability retirement benefits. The Committee explained that "[b]ecause this matter has been before this Committee previously, this summary will only include records dated between October 25, 2007, the date previously used to assess disability, and June 12, 2009, the date we now use to consider disability." The Committee also set forth that "all prior records were also re-reviewed and considered by the Committee . . . ."

¶8. In an order dated February 25, 2014, the Board adopted the "Proposed Statement of Facts, Conclusions of Law, and Recommendation" of the Committee and denied Lang's application for non-duty-related disability retirement benefits.

¶9. Lang appealed this decision to the circuit court. On April 2, 2018, the circuit court entered an order affirming the Board's decision. On April 13, 2018, Lang filed her notice of appeal from the circuit court's order.

## DISCUSSION

¶10. On appeal, Lang argues that PERS's decision denying her application for non-duty-related disability retirement benefits is arbitrary and capricious and not supported by substantial evidence. Lang asserts that in denying her application, PERS failed to consider the following factors: Lang was close to retirement age; she was found disabled by the Social Security Administration on October 25, 2007; her restrictions and complaints of pain precluded her ability to perform her job in June 2009; and that in November 2009, MDOC terminated Lang due to her inability to perform her job. Lang also submits that PERS's decision focused entirely on Lang's back problems and gave little consideration to the cumulative effects of her pain and other medical problems, including generalized arthritis,

5

right knee arthritis, diabetes, and back pain. Lang maintains that she was disabled on June 12, 2009, and as a result of her disability, she could not perform her job and duties as a correctional officer. For the reasons set forth below in our analysis, we find that PERS's findings and decision were arbitrary and capricious and were not supported by substantial evidence.

¶11. When reviewing the decision of an administrative agency, we recognize that "[a]n agency's conclusions must remain undisturbed unless the agency's order: 1) is not supported by substantial evidence, 2) is arbitrary or capricious, 3) is beyond the scope or power granted to the agency, or 4) violates one's constitutional rights." *Pub. Emps.' Ret. Sys. v. Walker*, 126 So. 3d 892, 894-95 (¶5) (Miss. 2013). Stated differently, "[t]he issue before this Court is not whether there was evidence in support of [Lang's] disability, but whether there was substantial evidence to support the finding of [PERS]." *Doyle v. Pub. Emps.' Ret. Sys.*, 808 So. 2d 902, 905 (¶8) (Miss. 2002). This Court has defined "substantial evidence" as "such relevant evidence as reasonable minds might accept as adequate to support a conclusion." *Davidson v. Pub. Emps.' Ret. Sys.*, 219 So. 3d 577, 581 (¶15) (Miss. Ct. App. 2017). "To be substantial, the evidence must be something more than a mere scintilla or suspicion." *Knight v. Pub. Emps.' Ret. Sys.*, 108 So. 3d 912, 915 (¶13) (Miss. 2012). "When reviewing an administrative agency's decision, the circuit court must look at the full record before it in deciding whether the agency's findings were supported by substantial evidence." *Pub. Emps.' Ret. Sys. v. Marquez*, 774 So. 2d 421, 427 (¶20) (Miss. 2000).

¶12. On appeal, "[t]his Court may neither substitute its own judgment for that of the agency

which rendered the decision nor reweigh the facts of the case." *Walker*, 126 So. 3d at 895 (¶5). "A rebuttable presumption exists in favor of PERS's decision, and the claimant has the burden of proving the contrary." *Davidson*, 219 So. 3d at 581 (¶15).

¶13. For a claimant to be entitled to receive PERS disability retirement benefits, she must first prove that she is disabled. *Walker*, 126 So. 3d at 895 (¶6). At the time Lang filed her application with PERS seeking disability benefits, Mississippi Code Annotated section 25-11-113(1)(a) (Supp. 2007) defined disability as:

> [T]he inability to perform the usual duties of employment or the incapacity to perform such lesser duties, if any, as the employer, in its discretion, may assign without material reduction in compensation, or the incapacity to perform the duties of any employment covered by the Public Employees' Retirement System (Section 25-11-101 et seq.) that is actually offered and is within the same general territorial work area, without material reduction in compensation.

"The PERS Medical Board also must certify that the claimant is 'mentally or physically incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and that the member should be retired.'" *Walker*, 126 So. 3d at 895 (¶6) (quoting Miss. Code Ann. § 25-11-113(1)(a)). The supreme court has cautioned that "PERS should not stray from the purpose of [section] 25-11-113, to compensate disabled employees that have not met the 25 year retirement criteria, in denying benefits nor set the bar so high that this purpose is frustrated." *Pub. Emps.' Ret. Sys. v. Shurden*, 822 So. 2d 258, 264 (¶19) (Miss. 2002).

¶14. Regarding PERS's regulations, at the time Lang filed her application for disability retirement benefits in 2008, the PERS Board Regulations simply required that "[t]he member shall submit medical evidence of the disability to the Medical Board for review." PERS Bd.

7

Reg. 45A(103)(2) (as amended in 2007). In August 2010, the Board amended PERS Board Regulation 45A to add subsection (105)(3). This subsection stated that Lang "is responsible for providing sufficient objective medical documentation to the Medical Board in support of his or her claim for disability." PERS Bd. Reg. 45A(105)(4). This regulation clarifies that "PERS does not have the burden of proving that an applicant is not disabled." *Id*. This regulation further states that for the purposes of section 25-11-113, "'medical evidence' shall be defined as 'objective medical evidence.'" PERS Bd. Reg. 45A(105)(4). The PERS Board Regulations defined objective medical evidence as

> reports of examinations or treatments; medical signs which are anatomical, physiological, or psychological abnormalities that are observed and documented by medical professionals; psychiatric signs which are medically demonstrable phenomena indicating specific abnormalities of behavior, affect, thought, memory, orientation, or contact with reality; or laboratory findings which are anatomical, physiological, or psychological phenomena that are shown by medically acceptable laboratory diagnostic techniques, including, but not limited to, chemical tests, electrocardiograms, electroencephalograms, X-rays, and psychological tests. *Non-medical information not documented by test results, such as an applicant's description of pain, is not considered objective medical evidence*.

PERS Bd. Reg. 45A(105)(3) (emphasis added). Relevant to this appeal, the supreme court has held that "medical diagnoses provided by [a claimant's] licensed physicians are objective, not subjective, evidence of disability." *Walker*, 126 So. 3d at 898 (¶12) (citing *Marquez*, 774 So. 2d at 427 (¶23)).[3]

---

[3] In accordance with Mississippi Code Annotated section 25-11-119(7) (Supp. 2007), the PERS Medical Board is comprised of three physicians. Section 25-11-119(7) also states that PERS "may [instead] contract with another governmental agency or nongovernmental disability determination service that is qualified to make disability determinations." As stated above, in June 2008, the PERS Medical Board recommended that PERS deny Lang's application for disability benefits.

¶15. In her application for disability benefits, Lang cited "degenerative/bulging disc" as her disability. After this Court remanded the matter back to the Committee, which held a hearing and ultimately found that Lang was not disabled and recommended that the Board deny Lang's request for benefits. The Board then denied Lang's request for non-duty-related disability retirement benefits. The circuit court affirmed the Board's decision. In accordance with precedent, in this appeal we must focus our inquiry on whether the record contains substantial evidence to support PERS's decision.

¶16. At the hearing before the Committee, Lang testified that she was not working in June 2009. Lang explained that she had been taken off work by her treating neurologist, Dr. Remi Nader,[4] due to degenerative disc disease in her back and neck and that Dr. Nader never released her to return to work.[5] Lang testified that she had neck surgery in 2008, which helped her neck pain, but she testified that her neck was still stiff and that she had trouble turning. As for her back pain, Lang described it as "being located above her belt line and run[ning] down the left side of the back and into the left side of the left leg . . . [and] causing her left leg to be 'sensitive to even touch.'" Lang described the feeling as coming and going for months at a time. Lang also stated that the steroid injections relieved her back pain, but the effect was temporary. Lang testified that she has spurring in her lower spine and that

[4] In the "Proposed Findings of Fact, Statements of Law, and Recommendation," the Committee incorrectly spelled Dr. Nader's name "Nadar."

[5] No transcript of the proceedings held on May 13, 2013, and September 16, 2013, was filed; therefore, some of the facts are taken from the "Proposed Findings of Fact, Statements of Law, and Recommendation" issued by the Committee, which are included in the record.

9

surgery may not be helpful and could possibly result in her paralyzation.

¶17. As for her work-related duties with MDOC, Lang stated that she worked in the Unit 29 tower at the Mississippi State Penitentiary. Lang testified that on an average day at work, she was required to stand, walk, climb stairs, drive a van, and carry a rifle. Lang testified that another part of her job responsibility was "processing" new inmates, which required her to climb up and down two sets of stairs when retrieving paperwork. Lang complained that walking up and down the stairs aggravated her back pain. Lang testified that until she stopped working in October 2007, she performed the requirements of her job, including climbing stairs, standing, and walking. Lang stated that stair climbing was the most difficult part of her job, and she also claimed she could not lift more than twenty pounds repeatedly. She stated that getting in and out of the van caused pain, as did standing and walking.

¶18. Regarding her physical health, Lang testified that she has developed diabetes, which cause her to suffer blurred vision and a "sick" feeling due to uncontrolled blood sugar. Lang reported that at the time of her independent medical evaluation with Dr. Collipp, she had not been diagnosed with diabetes, and she asserted that this condition should also be considered as a part of her disability case.

¶19. Lang's son, James Lang Jr. (James), also testified. According to James, his daughter lived with Lang (the child's grandmother) from October 2007 until July 1, 2009. James stated that he was present every weekend during that period of time. James testified that he watched his mother go from being a perfectionist to having difficulty with cooking and cleaning. He moved Lang into his house because she was not able to take care of herself,

10

even with the help of her granddaughter. James testified that Lang used to power walk with friends, but she can no longer do that due to pain. Instead, Lang "just sits on the couch most days." James testified that Lang's pain was exacerbated whenever she tried to "do things" around the house.

¶20. In its order recommending that the Board deny Lang's application, the Committee set forth a summary of the testimony presented at the hearing; a summary of the medical evidence it considered in making its decision; and its analysis. The record reflects that no additional medical records were introduced at this hearing.

¶21. The Committee set forth its finding that the objective medical evidence presented by Lang failed to "support a finding of a physical disability significant enough to recommend [that] her claim for PERS disability be approved." However, we find no evidence in the record to contest the medical conclusion of Dr. Nader, Lang's neurosurgeon and treating physician, that Lang was disabled.

¶22. In its summary of the medical evidence, the Committee noted that Lang had an MRI performed on November 13, 2007. The MRI results led to Lang's diagnosis of multi-level disc degeneration with posterior spondylosis, with levels of spinal stenosis, mostly on the left side. Lang's medical records reflect that on November 20, 2007, Dr. Karen Plunkett performed an electromyogram test and nerve conduction study (EMG/NCS) to determine whether Lang's pain was the result of spinal cord compression. The results of Lang's EMG/NCS were "normal."

¶23. The Committee reviewed Lang's medical records from her anterior cervical

11

discectomy with fusion performed by Dr. Nader on March 11, 2008. The Committee concluded on its own that "[t]his type of procedure is generally performed to remove a ruptured disc causing pressure on spinal nerve root." The Committee then expressed that a discectomy was not indicated for Lang, explaining that the results of Lang's objective testing, including the MRI and EMG, revealed that none of the conditions necessary for a discectomy were present. However, our review of the record reveals no evidence to indicate that an anterior discectomy is not appropriate to resolve spondylosis or spinal stenosis. The Committee observed that "[n]evertheless, the surgery was a success according to Dr. Nader's note." The record contains no evidence to support the Committee's questioning of Dr. Nader's recommendation of surgery. Furthermore, the record contains no evidence to suggest that Dr. Nader's recommendation for surgery breached any standard of medical care.

¶24. On April 2, 2008, Dr. Nader completed a PERS Form 7, "Statement of Examining Physician," where he stated that Lang had impairment in her lower extremities and gait, but it was unknown whether any impairment would be permanent. In its analysis of Lang's medical evidence, the Committee set forth that "[i]t should be noted that it is unlikely that these impairments would be related to the neck surgery." The Committee then stated that because Dr. Nader did not treat Lang's lower spine or lower extremities, the Committee would "give lesser weight to his opinion regarding impairment under these circumstances."

¶25. The record also reflects that on April 23, 2008, Lang underwent an independent medical evaluation by Dr. Collipp, who specializes in physical and rehabilitation medicine. Dr. Collipp's report reflects that during the physical examination, Lang provided "moderate

but incomplete effort." Dr. Collipp also determined that Lang suffered from "obesity, lumbar and cervical [degenerative joint disease and degenerative disc disease], status post C3-7 [cervical deformity] by report, left tibial tendonitis," as well as sleep apnea and hypertension. Dr. Collipp stated that Lang "does not provide full effort on [manual muscle testing]." Dr. Collipp opined that "based on the available records and information, Ms. Lang is physically able to perform a minimum of light-medium duty, with a maximum lift of 30 pounds, and she has room for physical improvement over the next year." It is unclear from Dr. Collipp's report whether he reviewed Lang's specific job requirements when performing his assessment of her abilities.

¶26.    The Committee addressed Lang's claim that Dr. Collipp's opinions are not relevant because Lang was diagnosed with diabetes after his exam and that this condition also plays a part in her disability. The Committee found that "this allegation is not supported by the diabetic testing called the Hemoglobin Alc, which is around 6, within an acceptable level." The Committee opined that "Lang is the only person who has the ability to control her diabetes by way of diet and exercise." The Committee acknowledged that Lang "may have some temporary vision change," but found that the record contained no medical proof of such. The Committee observed that "Lang never produced records from the eye doctor." As to Lang's claim that she suffered from sleep apnea, the Committee stated "the claim of sleep apnea is not disabling and no doctor has opined that it is."

¶27.    The Committee reviewed an October 3, 2008 assessment of Lang performed by physical therapist Diane Ross. The assessment was performed with regard to work-related

13

physical activities.    In her assessment, Ross indicated that Lang's pain and other symptoms "would interfere with the attention and concentration needed to perform simple tasks up to [two-thirds] of the day."  Ross limited Lang's walking and standing to two hours a day for each category and stated that Lang's legs should be elevated for seventy-five percent of a work day.  Ross indicated that Lang should not lift more than ten pounds on occasion, and she restricted Lang from twisting, stooping, bending, crouching, or climbing ladders.  Ross indicated that stairs should be used rarely. The report also noted Lang's significant reaching limitations.

¶28.    After reviewing this assessment, the Committee found that "[g]enerally, a complete function capacity evaluation provided by a physical therapist documents all testing performed and the results of each test.  It should identify the tasks a person can perform in addition to those a person cannot."  The Committee also observed that "[i]t is unclear why or by whom this assessment was requested."  The Committee stated that "[u]nlike a typical report of a function capacity evaluation, the assessment does not include objective testing or documentation to support the therapist's opinion, nor does it identify any medical problems or verbal physical complaints made" by Lang.

¶29.    Lang returned to Dr. Nader on May 22, 2008, and June 23, 2008.  At the June visit, Lang complained of neck pain, persistent throbbing low-back pain, and knee pain that had been present for "years."  Dr. Nader's notes reflect that "plain x-rays show intact alignment and instrumentation."  Dr. Nader identified Lang's right-leg pain rating as 2/10 "radicular" right leg pain, and he prescribed Naproxen and Aexeril.  Dr. Nader documented a "slight

14

limp" in Lang's gait; however, the results of a motor exam of Lang's upper and lower extremities remained normal.

¶30.   Dr. Nader then referred Lang to Dr. Cynthia Willingham for treatment of her back pain and ordered physical therapy.  Dr. Nader wrote that Lang could follow up *pro re nata* (PRN),[6] or as circumstances demanded.  Dr. Nader also wrote that Lang could return if conservative management of her low back pain failed.  The Committee explained that "[a]n instruction to follow-up on a p.r.n. basis is generally considered a release from treatment." The Committee found that "no assignment of disability was made at that time which supports the idea of a release from treatment for the neck."

¶31.   The Committee then stated that because Dr. Nader referred Lang to a pain specialist, the Committee "assume[d] that Dr. Nader thought Dr. Willingham was better suited to treat these complaints."   The Committee therefore opined that "Dr. Willingham's opinion regarding Ms. Lang's back condition carries more weight with this Committee."   The Committee provided no other evidentiary support for its statement that a treating surgeon's diagnosis is less credible due to a patient receiving a consult with a pain specialist.

¶32.   Although the last clinic note from Dr. Nader appears to be from Lang's June 23, 2008 visit, Dr. Nader issued Lang a "Certificate to Return to Work or School" dated January 12, 2009.   In that certificate, Dr. Nader stated that Lang reached maximum medical improvement, but he cautioned that Lang was "unable to work at [her] current job."  Dr. Nader assigned Lang a permanent disability rating of 8% whole body impairment based on

_____

[6] PRN is an initialism meaning "in the light of what has arisen" in Latin.  See Black's Law Dictionary 1415 (10th ed. 2014).

15

American Medical Association guidelines.

¶33. Dr. Nader also completed an FMLA medical leave request "Physician's Certificate" dated January 15, 2009, and stated that Lang has "lumbar spondylosis and radiculopathy," which commenced on October 7, 2007. Dr. Nader indicated that Lang had a fair prognosis. In the physician's certificate, Dr. Nader recommended that Lang receive physical therapy three times per week and pain medication. Dr. Nader indicated that Lang is not able to perform the duties of her employment, but he also indicated that her condition did not render Lang totally incapacitated.

¶34. Regarding the January 2009 certificates issued by Dr. Nader, the Committee found that "[t]hese statements appear to be unsupported by his earlier findings and were made without explanation or corresponding clinic notes." However, the record reflects no requirement for any additional contemporaneous clinic notes. The Committee explained that Dr. Nader performed surgery on Ms. Lang's neck and when he evaluated her on June 23, 2008, post-surgery, he released her from treatment PRN without any assignment of impairment or disability. The Committee stated that Dr. Nader "did not assign [Lang] any limitations or work restrictions at that time and there are no records indicating he had treated her in the intervening six and a half months." The Committee then set forth that "[f]or these reasons, we must give lesser weight to [Dr. Nader's] January 2009 statements regarding disability than we do to his actual clinic notes."

¶35. The Committee also stated Dr. Nader's most recent opinion as to Lang's disability was provided without objective medical evidence. However, such conclusion by the Committee

16

contradicts the evidence in the record showing that Dr. Nader's opinion was based on his own history and experience in treating Lang and performing her anterior cervical discectomy, as well as Lang's medical records, including her x-ray and MRI results, which showed that Lang suffered from multi-level disc degeneration with posterior spondylosis, with levels of spinal stenosis.

¶36. After its review, the Committee ultimately determined that the medical evidence presented by Lang failed to support a finding of physical disability significant enough for the Committee to recommend that her claim for PERS disability be approved. In support of its determination, the Committee explained that none of the doctors had found Lang to be disabled, except for Dr. Nader. The Committee opined that Dr. Nader's finding of disability was "unsupported by his own clinic notes." The Committee determined that Lang's MRI and EMG results did not support a finding that Lang was disabled as of June 12, 2009. The Committee did, however, find that Dr. Collipp's opinion regarding Lang's ability versus disability was supported by other medical evidence in the record. As stated, the Board adopted and affirmed the Committee's decision, and the circuit court then affirmed the Board's decision.

¶37. Keeping in mind the medical evidence presented to the Committee, as well as PERS's subsequent findings and decision based on this evidence, we now turn our focus to a review of similar cases where the Mississippi Supreme Court and this Court have addressed whether PERS's decision to deny disability benefits was supported by substantial evidence.

¶38. In *Public Employees' Retirement System v. Dishmon*, 17 So. 3d 87, 94 (¶33) (Miss.

17

2009), the supreme court found that "PERS is correct that it has the duty to determine which of the physicians' assessments and other documentation it should rely on in making a determination." The supreme court then clarified that the cumulative effect of a claimant's ailments must be considered in making its disability determination: "[W]hen PERS rejects individual assessments outright, it must not leave in doubt the cumulative effect that each ailment creates for the claimant as a whole in making its determination." *Id*.

¶39.    In *Knight v. Public Employees' Retirement System*, 108 So. 3d 912, 913 (¶4) (Miss. 2012), Dorothy Knight applied for non-duty-related disability retirement benefits with PERS. Knight's job duties required her "to be on her feet most of the day, walk up and down stairs, stand at the copy machine, prepare for committee meetings, and perform administrative and clerical tasks." *Id*. at (¶3). The Disability Appeals Committee conducted hearings and agreed with Medical Board's finding that Knight failed to prove permanent disability. *Id*. at (¶5). PERS specifically found as follows:

> The employer's certification of job description states that Ms. Knight does her job but with pain. Pain is subjective and there is no way to measure it. There is no statutory provision wherein an award of disability can be granted for pain when no objective reason for that pain can be produced. We have no proof of a medical illness that is causing Ms. Knight's pain. We have noted that she has some arthritis of the feet but that does not explain the complaints of sock like numbness and fever. We cannot recommend disability without persuasive and credible objective medical evidence of a disability. Thus, in this case, we cannot recommend Ms. Knight's request for disability be approved.

*Id*. at 916 (¶16).

¶40.    On appeal, the supreme court found that PERS's decision to deny Knight's disability claim was not supported by substantial evidence. *Id*. at 920 (¶31). The supreme court

18

explained that Knight did indeed present PERS with objective medical evidence of the cause of her pain. *Id*. at 918 (¶22). The supreme court pointed to records from two doctors: Dr. Philip Blount and Dr. Samuel Peeples. *Id*. In Dr. Blount's evaluation of Knight, "[h]e found that her impairment was at a maximum medical improvement, that she should not have to walk long distances (which was required for her job), and that she was suitable only for sedentary work." *Id*. Dr. Blount also stated that Knight "could have peripheral neuropathy, but he could not diagnose her with it since unmyelinated type C pain fibers are not detected on routine electrodiagnostic evaluations." *Id*. Dr. Blount ultimately diagnosed Knight with "bilateral metatarsalgia, an outside diagnosis of peripheral neuropathy without electrodiagnostic support; gait instability; and outside diagnosis of osteoporosis." *Id*. Dr. Peeples also evaluated Knight and stated that her symptoms were "very suggestive of peripheral neuropathy." *Id*. After reviewing this medical evidence, the supreme court held as follows:

> With Dr. Blount's statements that Knight could not continue the tasks required of her job (walking long distances) and that she was at a maximum medical improvement, Knight presented enough medical evidence to show that she was physically incapacitated for the job she was employed to do, that it was likely permanent, and that she should be retired. A sedentary job was not within the guidelines of her employment.

*Id*. at 919 (¶24).

¶41. The supreme court also found persuasive the fact that "no doctor concluded that Knight was not disabled." *Id*. at 920 (¶30). The supreme court stated that "[a]lthough no doctor expressly stated that Knight *is disabled*, both doctors suggested it with the language they used." *Id*.

19

¶42.	Similarly, in *Poole v. Public Employees' Retirement System*, 57 So. 3d 13, 16 (¶21) (Miss. Ct. App. 2010), this Court found that PERS's decision to deny disability benefits was not supported by substantial evidence.  In that case, PERS denied Sharon Poole's application for non-duty-related disability retirement benefits after finding no "objective and credible medical evidence of a disease or condition, which is causing [the claimant] to have pain." *Id*. at 14 (¶1).  PERS explained as follows:

> Basically the main complaint here is that Ms. Poole has back pain that she claims is disabling. . . . This is not to say that we believe that Ms. Poole is making up her pain. . . . We do not believe we have the authority to award disability in this case because we cannot find any objective and credible medical evidence of a disease or condition which is causing Ms. Poole to have pain.

*Id*. at 15 (¶13).

¶43.	Poole worked as a supervisor with the Mississippi Department of Human Resources. *Id*. at 14 (¶4).  Poole's job-related duties included supervising workers and clerks, which involved "a lot of deskwork and computer work" but also required her to walk the length of a football field ten times a day. *Id*. at (¶6).  Poole testified that "she ha[d] trouble sitting and tries to move around . . . and ha[d] been told by one doctor to do no bending, lifting, stooping, or driving more than forty-five minutes at a time." *Id*.  At her hearing before the Committee, Poole presented medical records consisting of diagnoses of lumbar disc degeneration, lumbar spondylosis, chronic pain, and failed-back syndrome, as well as findings from three physicians indicating that Poole was disabled. *Id*. at 15 (¶¶10-11).

¶44.	On appeal, this Court reviewed the record and found that Poole presented objective medical evidence in support of her claim. *Id*. at 16 (¶22).  This Court explained, "There is

20

no dispute that Poole was in pain and that she was unable to substantially perform the duties of her position. The fact that the Committee was unable to find the specific cause of her pain was not fatal to a finding of disability." *Id*.

¶45. This Court also reiterated that "it is not the court's job to determine whether the claimant has presented enough evidence to prove that she is disabled, but whether PERS has presented enough evidence to support its finding that the claimant is not disabled." *Id*. at (¶23) (citing *Doyle*, 808 So. 2d at 905 (¶8)). After its review, this Court held that the record failed to support a finding that Poole was not disabled and rendered an award of disability benefits to Poole. *Id*.

¶46. In the present case, we similarly find that the record fails to support a determination that Lang is not disabled. PERS acknowledged the two documents completed by Dr. Nader, Lang's treating neurosurgeon, documenting his determination that Lang was disabled. The record reflects that there were at least four MRIs and other tests results, as well as reports from consultations with other physicians, in Lang's medical record at the time that Dr. Nader issued these certificates. While some of these test results came back "normal," these results do not contradict Dr. Nader's finding of disability. Indeed, no evidence in the record does. PERS nonetheless discounted Dr. Nader's diagnosis, disability determination, and impairment rating because there were no contemporaneous clinical notes by Dr. Nader corresponding to these certificates. However, as discussed, the record contains no requirement for additional notes and PERS cited no requirement or standard of care requiring additional notes to render a doctor's certificate credible. Additionally, the record contains

21

no evidence to show that the note documented in Dr. Nader's certificate was insufficient or that further MRIs or other tests were needed to reach a diagnosis and impairment rating.

¶47.    Furthermore, PERS's decision reaches conclusions not supported by evidence in the record.  As stated, Lang testified before the Committee that on an average work day, she was required to stand, walk, climb stairs, drive a van, and carry a rifle.  Dr. Collipp's report does not provide a determination as to whether Lang was physically able to perform her specific job requirements.  Instead, Dr. Collipp simply opined that "based on the available records and information," Lang could perform a minimum of light-medium duty, with a maximum lift of 30 pounds.  We find that Dr. Collipp's conclusion does not necessarily contradict Dr. Nader's finding of disability.

¶48.    After reviewing the record before us, and for the reasons set forth in this opinion, we find that PERS's decision denying Lang's application for non-duty-related disability retirement benefits was not supported by substantial evidence and is therefore arbitrary and capricious.  *See Knight*, 108 So. 3d at 916 (¶13) ("[I]f an agency's decision is not based on substantial evidence, it necessarily follows that the decision is arbitrary and capricious."); *see also Shurden*, 822 So. 2d at 264 (¶19) ("PERS should not stray from the purpose of [section] 25-11-113, to compensate disabled employees that have not met the 25 year retirement criteria, in denying benefits nor set the bar so high that this purpose is frustrated."); *Marquez*, 774 So. 2d at 427 (¶20) ("When reviewing an administrative agency's decision, the circuit court must look at the full record before it in deciding whether the agency's findings were supported by substantial evidence.").  Accordingly, the judgment of the Hinds County Circuit

Court is reversed and rendered. We therefore decline to address Lang's remaining assignments of error.

¶49. **REVERSED AND RENDERED.**

**BARNES, C.J., WESTBROOKS, McDONALD, LAWRENCE AND C. WILSON, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. TINDELL, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GREENLEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. J. WILSON, P.J., NOT PARTICIPATING.**

**GREENLEE, J., DISSENTING:**

¶50. I disagree with the majority's determination that PERS's decision denying disability benefits to Lang was arbitrary and capricious. Furthermore, because the majority's determination may only be reached by reweighing the evidence, I must dissent.

¶51. This Court's review of PERS's disability determinations is limited. *Davidson v. Pub. Emps.' Ret. Sys.*, 219 So. 3d 577, 581 (¶15) (Miss. Ct. App. 2017). A PERS determination "must remain undisturbed unless [it]: (1) is not supported by substantial evidence, (2) is arbitrary or capricious, (3) is beyond the scope or power granted to the agency, or (4) violates the claimant's constitutional rights." *Id*. (quoting *Pub. Emps.' Ret. Sys. v. Howard*, 905 So. 2d 1279, 1284 (¶13) (Miss. 2005)). "'Substantial evidence' has been defined by this Court as 'such relevant evidence as reasonable minds might accept as adequate to support a conclusion.'" *Id*. (quoting *Knight v. Pub. Emps.' Ret. Sys.*, 108 So. 3d 912, 915 (¶13) (Miss. 2012)).

¶52. This Court has held that "[a] rebuttable presumption exists in favor of PERS's decision, and the claimant has the burden of proving the contrary." *Id*. (quoting *Dearman*

23

*v. Pub. Emps.' Ret. Sys.*, 205 So. 3d 1100, 1103 (¶10) (Miss. Ct. App. 2016)). Furthermore, this Court is "obligated to afford the agency's determinations of credibility in the fact-finding process substantial deference." *Id*. (quoting *Pub. Emps.' Ret. Sys. v. Cobb*, 839 So. 2d 605, 609 (¶12) (Miss. Ct. App. 2003)). This Court has stated that it "will not 're-evaluate the evidence' or 'make . . . determination[s] of the trustworthiness of some particular testimony.'" *Id*. Finally, "the question for this Court is not whether there was evidence in support of [Lang's] disability, but whether there was substantial evidence to support the finding of PERS that she is capable of returning to her prior employment." *Id*. at 582 (¶18) (quoting *Pub. Emps.' Ret. Sys. v. Dean*, 983 So. 2d 335, 340 (¶17) (Miss. Ct. App. 2008)).

¶53. Considering our limited standard of review, the deference that must be afforded to the agency, and the substantial evidence that was presented in support of PERS's finding that Lang was not disabled, I believe this Court should affirm.